MILDRED F. MILLETT *vs.* CHARLES W. MULLEN and others.

Penobscot. Opinion July 26, 1901.

*Taxation. Forfeiture to State. Redemption. Sale. Advertisement. Deed. Description. Writ of Entry. Equitable Defenses. Evidence. R. S., 1883, c. 6, §§ 71-76; 1841, c. 14, §§ 1-9; Stat. 1842, c. 11; 1845, c. 135; 1848, c. 272; 1852, c. 272.*

1.   Statutes providing for forfeitures of property for non-payment of taxes are to be construed strictly against the State and its grantees. Statutes providing for relief from forfeitures are to be construed liberally to effect such relief.

2.   The statute of 1848, ch. 65, approved August 10, 1848, explicitly vested in the former owner of lands in unincorporated places forfeited to the State under R. S., 1841, ch. 14, §§ 1-9, "a right to redeem the same" from the State, or its grantee, by paying the taxes, etc., "at any time within one year from the time of sale" by the State.

3.   The above statute of 1848 applied to those lands which had already been wholly forfeited and the forfeiture had become complete before the date of the statute, August 10, 1848, as well as to lands not then wholly forfeited.

4.   This "right to redeem" thus vested by the statute of 1848 in the former owners of lands thus wholly forfeited was more than a mere right to purchase, vesting no present interest. It was explicitly "a right to redeem," that is, a right to unloose from an incumbrance. The statute reduced the State's former title to a lien, and vested in the former owners a present heritable and conveyable title, good in them, and their heirs and assigns, against all parties but the State and its lawful grantees.

5.   An advertisement for sale by the State of "all the right, title and interest which the State of Maine has by virtue of such forfeiture (viz. a completed forfeiture under R. S., 1841, ch. 14, §§ 1-9) in and to six thousand five hundred acres of land in Township No. Three, Indian Purchase," and a deed from the State with the same description and no more, do not identify any specific parcel, or even any specific acres, and hence do not pass the State's title thereto, nor bar the former owner's right to redeem his land from the forfeiture.

6.   The heirs and assigns of the former owner of land forfeited for non-payment of State taxes have sufficient title to maintain a writ of entry against a party whose only claim of title is under the sale and deed described in the last foregoing paragraph.

7.   The argument that such a construction of the statute of 1848, ch. 65, will deprive the State of its revenues from taxes upon wild lands in unincorpora-

ted places by encouraging land owners to neglect payment of taxes, cannot prevail against the evident meaning and purpose of the statute. It is for the legislature to remedy the evil, if any.

8. The fact that the parties, supposing they had acquired the State's title, have paid the State taxes upon any tract of wild land for a long series of years, does not create any title in them. The payment of taxes by the actual occupant of land is evidence of the adverse character of the occupancy, but is not evidence that the tax-payer is in fact occupying the land.

9. The mere cutting and removing timber or wood from wild land from time to time for sale or manufacture, without any purpose of clearing the land, do not constitute an occupation sufficient to bar the record owner, though it be carried on for more than twenty years.

10. No equities can be considered in this case, since the only question raised by the pleadings or the evidence is as to the strict legal rule of legal title to property.

*Hodgdon* v. *Wight*, 36 Maine, 326, overruled.

*Chandler* v. *Robbins*, 79 Maine, 76, affirmed.

On report. Judgment for plaintiff.

Real action against Charles W. Mullen, James Rice, Millard E. Mudgett, Clarence S. Lunt and Joseph P. Bass to recover lots 4 and 16 of wild land, each containing two hundred acres, in Township No. 3, Indian Purchase, Penobscot County.

The case appears in the opinion.

*H. M. Heath, C. L. Andrews; J. Williamson, Jr., and L. A. Burleigh*, for plaintiff.

Defendants' claim that title is in the State :

1. It must be proven that the land to be forfeited was "not taxable by the assessors of any town or organized plantation." R. S., 1840, c. 14, §§ 1–10.

2. The statute requires a legal assessment. Tax 1844 was assessed upon the valuation of that year. While the tax act reads, "No. 3, Indian Purchase," it is plain that the tax was in fact assessed upon that portion of No. 3 referred to in the valuation as "Part No. 3, Indian Purchase." Constitutionally, the tax must follow the valuation. Figures from the state treasurer's books reinforce the proposition that the entire township, less the public lots, was not assessed under the description.

The State is bound by the same rules of certainty of description, if it would rely upon a forfeiture, as towns. *Griffin* v. *Creppin*, 60 Maine, 270 ; *Greene* v. *Lunt*, 58 Maine, 518 ; *Orono* v. *Veazie*, 61 Maine, 431 ; *Larrabee* v. *Hodgkins*, 58 Maine, 412 ; *Libby* v. *Mayberry*, 80 Maine, 137. The legal principle that required this court to declare the tax deeds void in *Moulton* v. *Egery*, 75 Maine, 485, and *Skowhegan Savings Bank* v. *Parsons*, 86 Maine, 514, requires an adjudication that an assessment reading "Part No 3, Indian Purchase, 23,040 acres," is equally void. An assessment in solido, upon a township, surveyed by the state into 127 lots of 200 acres each, five owned by the State as public lots, and 122 owned by various parties in severalty, is void. The State is bound by the same principles of justice, independently of statutory rules, that govern towns. *Wallingford* v. *Fiske*, 24 Maine, 386, decided that each lot should be separately taxed. In *Greene* v. *Lunt*, supra, it was held that if there is no definite parcel taxed there can be no lien. *Nason* v. *Ricker*, 63 Maine, 381, held that a valuation and assessment in gross upon two distinct parcels is void. Under any statutory system, then or now in use, lands divided by the State itself into lots should be taxed as lots. R. S., 1840, c. 14, § 1, contemplated such separate assessment : "State tax. . . . on any township or tract of land." Each lot was a tract, with an independent value. It is not impracticable for the State to ascertain from the records the subdivision of separate ownerships. Towns are required so to do. Surely in Indian Three it was easy so to have done in 1844, for the State made the full subdivision and deeded accordingly. A tax assessed for public purposes cannot constitutionally be imposed upon a portion only of the real estate of a town, leaving the remainder exempt. *Dyar* v. *Farmington*, 70 Maine, 515. The State has no more authority to tax a township owned in severalty, subdivided into lots, as a unit, than it would have to tax in solido all the " wild lands in Penobscot."

It would assist the future collection of State taxes to have this court hold that wild lands owned in severalty must be separately assessed and separately described, and that this point should not be

dismissed as unnecessary to the decision of this cause. Such a decision would put the State where its tax sales would be valid. There would be an end of the acreage system of payments, and no more deeds like that in *Moulton* v. *Egery.* With the fear of valid tax sales before their eyes, all taxes on wild lands would be promptly paid. The State assessors could easily make the assessment follow the separate ownerships to the extent of subdivisions in severalty. The registries of deeds contain the evidence. There is a crying need of such a revolution in the present system, whereby the State is annually a heavy loser. Good public policy demands this construction of the law and its decision. The State has suffered long enough by clinging to the antiquated methods of the State Treasurer's office that defy every principle of law and business. There is no proof that the public lots were exonerated. If so, the lots doomed as unpaid were unequally taxed.

In *Hodgdon* v. *Wight,* 36 Maine, 326, no question was raised as to the sufficiency of the description in the tax deed. It was assumed to be good, although clearly void. No question was raised as to the validity of the assessment. The entire township was owned in common and therefore properly taxed in solido. The validity of the assessment was assumed. None of the points as to the validity of assessment now raised were there argued, because not involved under the facts. The effect of the law of 1848 upon the point of forfeiture, aside from the receipt of taxes for subsequent years, was neither raised, argued nor decided. It was admitted by counsel that forfeiture was complete unless the two points he raised were sustained. The court decided only the points argued. The case, therefore, decides only these two points: (1) That under the act of 1848, extending the time of redemption, the fact that the State after 1842 assessed the land and received taxes for subsequent years was not a waiver of a forfeiture in 1842; that the waiver did not extend beyond the terms of the act of 1848, and the full effect of that act was not passed upon by reason of the admissions of counsel. (2) If the State acquired title by forfeiture, the title of the purchaser is good under the law of 1852. This case is distinguished by *Chandler* v. *Wilson,* 77 Maine, 76,—a

stronger case than we need. It presents the issue of admitted for-feiture to the State, no title in defendant, record title in plaintiff. Plaintiff's title identical with ours, from the State through a Revo-lutionary Soldiers' resolve, and quitclaim deeds to plaintiff. As in *Chandler* v. *Wilson*, the defendant has no degree of title, and we have a good record title. Properly understood it amounts to this, that a demandant, in order to prevail, must show that he has the title—or a better or higher evidence of title than the tenant.

No legal sale took place. The sale was of "6500 acres of land in Township No. 3, Indian Purchase, in the county of Penobscot." That alone is fatal.

The sale also included the county taxes of Penobscot county for 1841-2-3-4. It was the duty of the State Treasurer, as a condi-tion precedent to forfeiture, to cause such county assessments to be published in the same manner as State taxes. No advertisements were published.

There is no proof that anything was legally done to enable the owners of the lots in controversy to avail themselves of their extended right of redemption. The reasons given by HASKELL, J., in his concurring note to *Chandler* v. *Wilson*, to show non-for-feiture, all apply. But the decision itself goes further than the concurring note of Judge Haskell. The plaintiff admitted a for-feiture to the State, sufficient to authorize a sale. The defendant admitted that he took nothing under the sale. The case decided that where the law gives a right of redemption, the owner's title is not divested until there is a legal sale. That is precisely the case at bar. Admitting a forfeiture, for the purpose of argument only, the sale was invalid for many reasons, and no title passed to McCrillis. By the act of August 10, 1848, the owner had a right of redemption good until a legal sale. Plaintiffs, therefore, have a better title than the defendants.

Counsel also cited: *Hodgdon* v. *Burleigh*, 4 Fed. Rep. 111, affirming *Clarke* v. *Strickland*, 2 Curtis, 493, holding that if a tax was legal and the land forfeited for non-payment, a subsequent act of the legislature, giving further time for the payment of the tax was a waiver of the forfeiture. We submit that a new and con-

tinued taxation of this land from 1844 to 1899 (see tax acts for each year) is a waiver of forfeiture, in spite of the decision in *Hodgdon* v. *Wight*, to the contrary. After the State has received its taxes, even though an illegal sale, the purchaser well understanding that under the law he cannot recover the amount from the State, the lien is discharged. The State so construes it by subsequently assessing the land for fifty years. The authority of the cases relied on is best shown by the language of the act of 1848, plainly waiving forfeiture, giving further time to redeem, and accepting title in State only to extent of lien, fee to remain in owner until divested by legal sale. Plaintiffs having made by their deeds a good show of title are entitled to judgment. Defendant's right rests wholly on showing full compliance with the Constitution, the tax act of 1844 and the act of 1848, a legal sale and a legal deed. The deed is void upon its face. Where the deed alone shows an illegal sale, the defense utterly fails. *Allen* v. *Morse*, 72 Maine, 502.

*C. F. Woodard*; *P. H. Gillin*; *J. D. Rice*; for defendants.

Demandant never acquired any interest whatever in the lots in Indian Township, Number Three, lots 4 and 16, for the reason that their predecessors in title under whom they claim, absolutely lost said lots and all interest therein through the non-payment of the State tax assessed thereon for the year 1844, during the term of four years from the time of the assessment of said tax. By said forfeiture the title vested in the State, free and quit from all claims by any former owners, and the same was held and owned by the State by a title declared by statute law to be perfect and indefeasible. The tax was assessed by the Legislature, chap. 179 of the Private and Special Laws 1844. Said tax was published in the State paper three weeks successively, and the last publication was within three months from the day on which the State assessment was made by the Legislature. This State tax of 1844 was never paid.

Validity of the assessment: It is precisely such an assessment as was sustained by this court in the case of *Hodgdon* v. *Wight*, 36 Maine, 326, and in *Adams* v. *Larrabee*, 46 Maine, 516. In the

latter case the court said: "If the assessment had been upon the whole township in solido, designating the number and range, it would have been good. In such case each owner could have computed the amount due from him for his part." *Hodgdon* v. *Burleigh*, 4 Fed. Rep. 111, wherein the same questions were involved as in *Hodgdon* v. *Wight*, but in which the opposite conclusion was reached, shows also that the Circuit Court held that the State acquired a perfect and indefeasible title. "The law declares that lands shall be forfeited to the State for non-payment of taxes after the assessment has been advertised for a given period. . . . . It seems to be admitted by the plaintiff that the proceedings were legal enough to create a forfeiture to the State." *Chandler* v. *Wilson*, 77 Maine, 76, 82. "After the State had acquired a title by forfeiture, nothing but its own act, or that of some authorized agent, could deprive it of that title. It is further insisted that the Land Agent had no authority to sell and that his proceedings were not in conformity to law. The respondents in such case would fail to exhibit any title to the land claimed by the petitioner, and to prove the allegations made in their brief statement." *Hodgdon* v. *Wight*, 36 Maine, 326.

At the time of the assessment of this tax of 1844, and upon the expiration of four years thereafter, the time when the title of the plaintiffs' predecessors in title had been absolutely forfeited and wholly lost, and the State had acquired a perfect and indefeasible title to the lots, there was no existing provision of law authorizing any further redemption of the lost title or providing for a sale of the forfeited property by the State. As the court said in *Hodgdon* v. *Wight*: "After the State had acquired a title by forfeiture, nothing but its own act, or that of some authorized agent, could deprive it of that title." The State could dispose of the lots in any manner that it saw fit. Nobody except the State had any interest whatever in the lots. The State was not bound to sell the lots at all in order to protect its title, that title being already absolute and indefeasible. It could have given the lots away for educational or charitable purposes, or any other purpose that it saw fit, and nobody could have questioned the title of the recipient.

When the State, therefore, came to sell under the provisions of chapter 65 of the Public Laws of 1848, it was not a sale for the payment of taxes, but a sale of property to which the State had an absolute and indefeasible title and in which nobody else had any interest whatever. *Watkins* v. *Eaton*, 30 Maine, 529, 535. The same distinction appears in the case of *Chandler* v. *Wilson*, 77 Maine, 76. When the State in passing the act contained in chap. 65 of the Public Laws of 1848 gave a further right of redemption, it was not to a person already having an existing right to redeem, but was simply an act of grace, and in order to avail himself of such right to redeem, the party to whom the right was given was bound to exercise it within the time of redemption specified in the act and strictly in accordance with the terms of the act. Neglect to avail himself of the right of redemption offered did not lead to a forfeiture of any right which the party previously had, but was simply the rejection of the act of grace tendered. *Staats* v. *Board*, 10 Gratt. (Va.) 400; *Usher* v. *Pride*, 15 Gratt. (Va.) 190; *Smith* v. *Thorp*, 17 W. Va. 221. *Hodgdon* v. *Burleigh* cannot be regarded as an authority. Whatever may have been the views of the court, it was its duty in such case involving the construction of statutes of the State of Maine, to have followed the decisions of the highest court of this State in construing such statutes and in declaring the rules affecting the title of real property within the limits of this State. *Douglass* v. *Pike*, 101 U. S. 677. In the case of *Hodgdon* v. *Burleigh* throughout there is no mention of the case of *Hodgdon* v. *Wight*, and it is to be presumed that it was not brought to the attention of the court, as otherwise it would have been followed. Therefore, while the case of *Hodgdon* v. *Wight* is authoritative, the case of *Hodgdon* v. *Burleigh* can not be so regarded. *Clarke* v. *Strickland*, 2 Curt. 439, S. C. 5 Fed. Cas. 984, is open to the same objection which has been urged to the case of *Hodgdon* v. *Burleigh*, and cannot be regarded as an authority. In *Clarke* v. *Strickland* the judge ignored the decision made in *Hodgdon* v. *Wight*, and the result of that decision, which was judgment for the petitioner. Necessarily involved in this was the decision that the title was in the petitioner. This title he derived

by virtue of a deed from the State, and the State had acquired its title through the forfeiture; so that the court must necessarily have decided that the State had acquired title to the premises through the forfeiture, that this forfeiture had not been waived, that it continued to be held by the State up to the time of its conveyance, and that it passed by the conveyance from the State to the petitioner. I, therefore, do not see how it could have been understood that the case of *Hodgdon* v. *Wight* was not an authority binding upon the Federal court announcing this decision, and I respectfully submit that it was so binding, and *Hodgdon* v. *Wight* should be followed here and that the case of *Clarke* v. *Strickland* cannot be regarded as an authority here.

Deed to McCrillis from Samuel Cony, Land Agent, is made in compliance with the law under which that deed was given : Pub. Laws 1852, c. 272; *Hodgdon* v. *Wight*, supra. " If the State had acquired a title, that of the purchaser from it has been admitted, and all defects in the proceedings cured by the act approved on April 23, 1852, which provides that any deeds given by the land agent, for lands sold for alleged forfeitures to the State, shall vest in the grantee all the interest of the State, notwithstanding any irregularities in the notices or failure to comply with the provisions of the acts under which said sales were made." Lands which had been forfeited to the State through the non-payment of State taxes assessed thereon from the year 1836 down, were after the passage of the law contained in chap. 65 of the Public Laws of 1848 doubtless sold under the provisions of that law, and it is extremely probable that the Land Agent in making such sales had not fully complied with all the provisions of that law, and it is further extremely probable that parties who had purchased such lands under such sales had discovered, through the advice of counsel or otherwise, that the Land Agent in making such sales had not fully complied with all the provisions of the law. Then it is probable that such parties came to the legislature for relief, either through the presentation of claims for reimbursement, or that the State should make the titles good. The result of all this appears to have been the passage of this act contained in chapter 272 of the Public Laws of 1852.

We do not regard any small difference of acreage as material or important, or that the description in the deed is insufficient. So, too, the description in the deed, the sale being from a vendor to a purchaser, the vendor having been the absolute owner of the property, is entirely sufficient. As between vendors and purchasers, a deed in order to be good need not definitely describe the exact land or amount of land which the vendor had previously owned. If the description covers more than the vendor had owned, the deed will convey what he owned. If the vendor owned the whole of a parcel of land and conveyed only half of it, not describing which half, the deed would undoubtedly convey an undivided half of the land, and so, too, in the case of any other fraction. *Greene* v. *Lunt*, supra, p. 534, by the clearest implication shows that, as between vendor and purchaser, such a description as is herein involved is perfectly good where it says, " Such a description, however it may be in a deed when the grantor makes his own bargain and can enter into such a contract as he pleases, etc." These were questions in which the State, having a perfect and indefeasible title to the lands, and being the grantor in the deed, could be alone interested. That it did not insist upon any such questions, was willing to waive the same, and intended that McCrillis the purchaser should have all the title that the State had had, is shown by the passage of the act of 1852. The demandants have not succeeded to any interest which the State might have retained; they do not claim under the State; and occupy no position enabling them to raise any such question.

If these lots were forfeited to the State and the State acquired a perfect and indefeasible title to them through the non-payment of any State tax, it is immaterial whether or not any county tax was assessed upon these lots, or whether any county tax if assessed upon the lots, was paid. R. S., 1841, c. 14, § 9. If the State tax was assessed, advertised and remained unpaid, the forfeiture by the former owner and the acquisition of title by the State followed from these alone, and there can be no necessity or occasion for considering or discussing the matter of county taxes at all. And this same consideration in itself distinguishes the case, under

this report, from the case of *Chandler* v. *Wilson*, 77 Maine, 76, and shows that the suggestions contained in the added note of Judge HASKELL to be found on page 83, has no application in this case. In that case Judge HASKELL states that the land was sold by the state for the non-payment of a legal state tax and an illegal county tax. In this case the lots were not sold by the state for the non-payment of any tax, but had been forfeited to the state and were held by the state by a perfect and indefeasible title for the non-payment of a state tax alone. When the lots were sold by the state they were sold, not for the non-payment of taxes, but by the state, sole owner of the premises, in which nobody else had any interest, so that the state had the right to dispose of them in any manner and upon any terms that it saw fit. I respectfully submit that this case should be governed by the case of *Hodgdon* v. *Wight*. It is precisely the case that was there decided and the two cases are in every respect upon all-fours with each other. That case has since 1853 constituted a rule of property in this state which everybody must be held bound to know and recognize. Upon the faith of it numberless conveyances must have been taken and accepted in the carrying out of purchases of land made upon full consideration and covering the whole value of the property purchased. The extent to which such conveyances have been accepted is illustrated and shown by the long chain of title through which the defendants acquired the premises herein involved. An examination of these conveyances, or of the records thereof, will show that the purchasers in many, if not all the cases, paid a full consideration covering the whole value of the lands conveyed. The very defendants herein paid more than $1.50 per acre for every acre of these lots. It is the duty of this court to respect and follow the rule of property so long established and so extensively relied upon. The question may not be whether this court would now, were the question an entirely new one, reach the same conclusion, though I have already tried to show that the conclusion is right, and founded upon correct and just premises. But even if wrong, it should be regarded as settled. Much less harm will result from the following of an established rule, even if the

rule be incorrect, than would be done by disturbing the settlement of this rule with the consequent confusion in titles that would necessarily be produced. The decision of this court in *Hodgdon* v. *Wight* has stood since 1853 without being overruled or questioned. "The law in regard to titles to real estate especially requires stability. As injurious as are frequent changes in the law, no decisions as to personal property or damages require such permanency as those relating to realty. Even the decisions in the latter case will be scrupulously guarded and preserved, for titles are for all time and should stand as passed upon if possible. Courts are always reluctant to overrule or reverse any decision unless it is manifestly unjust and inaccurate. Titles may be largely or wholly dependent upon previous decisions, and landed interests would be jeopardized by sudden or frequent changes in interpretation or construction of legal principles." 23 Am. & Eng. Enc. of Law, 28, and cases in notes. All the equities of these cases, it is respectfully submitted, appear to be with the defendants. The testimony in the cases shows that the several demandants are speculators in titles, who have picked up for comparatively nothing the claims of parties who, until they were told by these demandants, or those acting in their interest, never knew of the existence of such claims, claims based upon titles which had been absolutely lost and forfeited more than fifty years ago, and not only lost and forfeited, but entirely abandoned during their whole lives by all parties who may at any time have possessed the titles. The case shows an express admission that all taxes upon this property from 1845 down to the present time have been paid by the defendants and their predecessors in title, the plaintiffs and their predecessors in title having not only abandoned the property, but avoided bearing all burdens placed upon it. It is upon such claims, so acquired, that these demandants seek to take from these defendants property for which they had paid full value, relying upon a rule of property so clearly established by this court and so long maintained without question, and upon which they have borne all the burdens in the way of taxation by law placed upon the property. Under these circumstances, it is respectfully submitted, that while the demand-

ants should be declared entitled to and have all they are by law entitled to, they should have nothing more.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, PEABODY, JJ.

EMERY, J.   The demanded land is two specific parcels of two hundred acres, each outside of any organized municipality of any kind, but within a definite, surveyed and recognized sub-division of the territory of the state officially designated as "Township No. Three, Indian · Purchase, Penobscot county." The action was begun December 21, 1897. The defendant deraigns title solely from a deed from the State land agent to William H. McCrillis, dated April 30, 1849, and · purporting to effectuate a sale made according to the statute 1848, ch. 65, of land in that township forfeited to the State for the non-payment of certain State taxes theretofore assessed and remaining unpaid. In the recitals of the proceedings under that statute, and in the deed itself, the only description of the subject matter thus sold and to be conveyed is, "all the right, title and interest which the State of Maine has by virtue of such forfeiture in and to six thousand five hundred acres of land in Township Three, Indian Purchase in the County of Penobscot." There were at that time, and now are, over twenty-three thousand acres in the township.

It has been repeatedly and uniformly held that such a sale or deed with such a description is utterly ineffectual to designate, or to pass any title to, any specific tract or acre in the township. *Larrabee* v. *Hodgkins*, 58 Maine, 412; *Griffin* v. *Creppin*, 60 Maine, 270; *Moulton* v. *Egery*, 75 Maine, 485; *Skowhegan Savings Bank* v. *Parsons*, 86 Maine, 514. The act of 1852, ch. 272, providing that the deed should "vest in the grantee all the interest of the state in the lands therein described and no more," does not help the matter, for no lands are described in the deed or the notice of sale. It is still impossible to determine that the demanded lot is part of the 6500 acres said to have been sold, rather than of the 16,500 acres which were not sold. The defend-

ant, therefore, has no title with which to resist even the least title which the plaintiff may prove.

The defendant contends, however, that the plaintiff has not even the least title, since all the title under which he claims passed from his predecessors in title to the state more than twenty years before the date of his writ for non-payment of state taxes. This contention should be next considered, since, if it be sustained, the plaintiff fails even though the defendant has no title. *Hewes* v. *Coombs*, 84 Maine, 434.

It is claimed that the title was wholly forfeited to the State for the non-payment of the State tax of 1844 assessed March 21, 1844. The statute then in force is contained in R. S., 1841, ch. 14, §§ 1–9. It provided,—(1) that when a state tax was assessed by the legislature upon any township or tract of land not taxable by the assessors of any municipality, the state treasurer should cause the assessment to be published in the State paper three weeks successively, the last publication to be within three months from the day the assessment was laid,— (2) that the land so taxed should be held liable to the State for the payment of the tax,—(3) that the owner might at any time within four years from the time of publishing the assessment redeem the land by paying into the treasury of the State the amount of the tax, etc. —and (4) that if the State tax so assessed and advertised was not so paid within the time named, then in such case, "the said township or tract shall be wholly forfeited and the title thereof shall vest in the State free and quit from all claims by any former owner, and the same shall be held and owned by the State by a title which is hereby declared to be perfect and indefeasible."

A state tax was assessed upon this township by the legislature by Act dated March 21, 1844. Notice of this assessment was published by the state treasurer in accordance with the statute. The plaintiff and his predecessors in title have never paid any of that tax, nor have any persons for them. A large amount of the entire tax remained unpaid at the end of the four years from the time of the publishing. The land was then "wholly forfeited" to the State.

But on August 10, 1848, the legislature passed an act (ch. 65) providing:—(1) that the State Treasurer should within thirty days from that date publish a list of all tracts of land then forfeited to the State, and should thereafter annually on the first Monday of September publish a similar list of all tracts of land which may at that date have become forfeited,—(2) that any person having a legal interest in such tract so forfeited might discharge his interest from the tax and forfeiture by paying his proportion of the tax, interest and costs at any time before such list is published, or on or before the first day of March next after such publication,—(3) that immediately after said first day of March (viz, the March next after the publication) the Land Agent should advertise and sell the lands upon which taxes had not by that time been paid,—(4) that the Land Agent at any time before the land was thus sold should accept all taxes, interest and costs due on the land so advertised,—(5) in terms that " the owner or owners of any township or tract of land sold under the provisions of this act shall have a right to redeem the same by paying the purchaser or his assigns the amount for which said township or tract was sold, with interest thereon at the rate of twenty per cent per annum, and the cost of reconveying the same at any time within one year from the time of sale,"—and (6) that the owner could collect of the State his share of the surplus proceeds of the sale, within three years after the sale. In 1852 was passed the Act already noted (ch. 272) providing that the State's title in land described in the deed should pass to the grantee " notwithstanding any irregularities in the notices, or failure to comply with the provision of the Act under which the sales were made."

The contention of the defendant is, that the title at the end of the four years from the notice of the assessment of 1844, viz., in May, 1848, some months before the passage of the Act of 1848, was by operation of the statute completely transferred from the plaintiff's predecessors to the State and became vested in the State by a "perfect and indefeasible title," "free and quit from all claims of the former owners;" or if their entire title was not extinguished by the lapse of time under the statute of 1841, it was,

nevertheless, extinguished even under the Act of 1848, by the action of the State in undertaking to sell and convey its title, whether effectually or not. The plaintiff contends that the Act of 1848, ch. 65, amended the Act of 1841, and expressly covered lands already forfeited under that Act, and conferred upon the original owners a further right to redeem until the lapse of one year after a sale of the land had been effectually made under the amending statute,—that is, within one year after the State parted with its title. His argument is, that this right of redemption with which the former owner was thus endowed is a title to the land good against all the world except the State and its grantees, and that such title continues heritable and conveyable until the State cuts it off by such a sale and conveyance as will vest the State's title in a purchaser.

It is a familiar principle that when a statute imposing or enforcing a tax or other burden on the citizen even in behalf of the State is fairly susceptible of more than one interpretation, the court will incline to the interpretation most favorable to the citizen. *Partington* v. *Att'y Genl.* L. R. 4 H. L. Cas. 122; *United States* v. *Wigglesworth,* 2 Story 369, 373; *Tolman* v. *Hobbs,* 68 Maine, 316. If the statute imposes a penalty it is, to that extent, a penal statute to be construed strictly against the party claiming the penalty. *Hubbard* v. *Johnstone,* 3 Taunt. 177; Dwarris on St. 641. If a statute is penal even though it is also remedial it must be strictly construed, *Abbott* v. *Wood,* 22 Maine, 541–546; and a statute providing for the total forfeiture of property for the non-payment of one tax is certainly highly penal. On the other hand, statutes enacted to relieve the citizen from a forfeiture incurred should be construed liberally. *Alter* v. *Shepherd,* 27 La. An. 207; *Perley* v. *Jewell,* 26 Maine, 101. Applying these principles to the question here raised, assuming it to be an open question, the court can hardly doubt that it was the intention of the legislature in the Act of 1848 to recede from the drastic legislation of 1841 absolutely appropriating the land of the citizen without even the usual inquest of office,—and to remit to him some interest in the land of which he should be wholly

deprived only when the State, upon due proceedings, sold and conveyed its interest to some grantee. This intention is made more evident by some intermediate legislation. In 1842 (ch. 11) the legislature opened all forfeitures then incurred, and conferred a right to redeem for one year thereafter. In 1845 (ch. 135) was another opening of forfeitures and an extension of the time of redemption till May 1, 1846. In 1848 (ch. 65 above cited) the legislature again opened all forfeitures, but this time, instead of fixing a particular day when the forfeiture should again become absolute by mere lapse of time, it provided that the forfeiture should not again become absolute until one year after the land had been advertised, sold and conveyed by the State officials as prescribed in the act. This later act must prevail over any inconsistent provisions in the earlier act of 1841, even though such provisions are not in terms repealed.

The defendants, however, claim that there is a distinction between those cases in which the land had been already wholly forfeited as in this case, and those in which the owner had an existing right of redemption at the time of the passage of the act of 1848, August 10,—that in the latter cases the right of redemption was continued, leaving a title in the former owner until he failed to pay after one year from sale, while in the former cases in which the former owner's title had been wholly divested, such owner had no title and could only acquire a title by making the payment. The argument is,—that the State by the act of 1848, while it continued a title not then wholly divested, did not ex vi termini restore a title which had then been wholly divested, but only offered to do so on condition the former owner should pay the taxes, etc.;—and that no such payment having been made in this case, the predecessors of the plaintiff never obtained even the least title under that act.

We cannot find any such distinction expressed or implied in the statute of 1848. It expressly names lands " forfeited" and also lands that " may become forfeited " as those to be affected by its provisions. Both classes were to be treated alike,—both to be listed, advertised and sold. Both could be redeemed from the Land Agent before sale. The " right to redeem the same " from the

purchaser was extended to both. This was not a mere right to purchase, giving no present title. It was expressly "a right to redeem." That phrase in law implies more than a right to acquire. It implies a right to disencumber, to liberate from a lien or claim. Cent. Dict. We are convinced that the legislature in the Act of 1848, intended to, and did, reduce its once absolute title to a lien to again become absolute only in the State's grantee after one year of sale,—intended to and did take off the forfeiture already accrued, and as to such lands recognized a title still existing in the former owners, subject only to the superior title of the State. This legislative action and intent were sufficient to revive in the former owners, the plaintiff's predecessors, a title as good as before against all parties but the State and its grantees. This title, until extinguished by proper proceedings under the statute, is as heritable and conveyable as that of the owner of any equity of redemption.

But we think the question is not now an open one. In *Griffin* v. *Creppin*, 60 Maine, 270, (1872) the defendant claimed that the land had been forfeited to the State. The court said, "assuming there had been such forfeiture, the evidence fails to show any title in the defendants by which they can justify as against the plaintiff,"— and rendered judgment for the plaintiff. The clear import of the decision is that, since the statute of 1848 at least, the forfeiture to the State is not so complete and absolute as to deprive the the former owners of rights of action against strangers. Later the question was again expressly raised, considered and decided in a real action, *Chandler* v. *Wilson*, 77 Maine, 76. The defendant in that case deraigned from a tax sale and deed with the same want of description as in this case, as appears by the papers in the case though not in the published report. The defendant conceded, as the court adjudged, that he had no title, but he set up the same defense as here,—that the plaintiff's predecessors in title had utterly lost title through absolute and complete forfeiture to the State for non-payment of State taxes, so that the State had the absolute title and the plaintiff's predecessors had no title or interest whatever. The plaintiff admitted that the tax proceedings

were regular enough to create a forfeiture to the State, but contended that there remained such a right to redeem from forfeiture as gave his predecessors and himself a title good against all persons except the State and its grantees under effectual conveyances. In rendering judgment for the plaintiff the court necessarily sustained this contention, and overruled that of the defendant. In the opinion the court said (PETERS, C. J.): "In such case, the State has the land, not to keep,—not to use,—but to sell for the taxes. The State, in view of all the statutory requirements, has but a lien upon the land." The tax proceedings in that case were for the tax of 1866, but there has been no legislation since 1848 impairing the effect of that statute upon the question here involved. The same provisions are practically embodied in R. S., ch. 6, §§ 71 to 76.

The defendant, however, invokes the case of *Hodgdon* v. *Wight*, 36 Maine, 326 (1853) as equally decisive the other way, and claims that it has so long remained a rule of property unquestioned in this State, and so many investments have been made and obligations incurred upon the credit properly given it as an authoritative exposition of the law, it should now be upheld even against the later decisions (1872–1885), and even though erroneous in principle. We fully recognize the principle of stare decisis, but we do not understand the case of *Hodgdon* v. *Wight*, as explicitly and necessarily involving a decision of the question contrary to the decision in *Chandler* v. *Wilson*, whatever the language of the court may indicate were its views upon the question. It is the necessary decision, not the reasoning nor the assumptions, that should be taken as the rule established. *Hodgdon* v. *Wight* was a proceeding by petition for partition originally against persons unknown, the plaintiff claiming 2593 acres in the township. The defendants Wight and Brown came in and by brief statement alleged title in themselves to 6244 acres in common and undivided with others in the same township. The plaintiff by counter brief statement alleged that out of the 6244 acres claimed by the defendants, he was entitled to his 2593 under a sale and conveyance to one Stanley by the State for non-payment of the State Tax of 1842. The only question considered was whether the State had acquired

any title to the land from the failure of the owners to pay the
State tax of 1842. The contentions of the defendants in that case
were, (1) that the tax had been paid,—(2) that the state had
waived its title by afterward assessing the land as owned by their
predecessors,—(3) that the state was bound by the statement of
its treasurer or his clerk to their predecessors that the tax had
been paid. These contentions were overruled, and it was decided
by the court that the state had acquired a title for the non-pay-
ment of the tax.

The defendants also made the point that the land agent had no
authority to sell, and that his proceedings were not in conformity to
law. The court turned this point aside by saying that it was
destructive of the defendant's own right to appear and contest.
The question whether the former owner or his successors in title
had a right to redeem the land from the State's title was not con-
sidered, and does not appear to have been presented, or even mooted.
The court, after disposing of the various objections to the State's
title, concluded its opinion as follows:— "If the State had
acquired a title, that of the purchaser from it has been admitted,
and all defects in the proceedings cured by the Act approved on
April 23, 1852, which provides, that any deeds given by the land
agent, for lands sold for alleged forfeitures to the State, shall vest
in the grantee all the interest of the State, notwithstanding any
irregularities in the notices or failure to comply with the provisions
of the Acts under which said sales were made."

For some reason, perhaps because necessary to their own title to
these and the remaining acres, the defendants admitted that the
plaintiffs were grantees of whatever title the state had acquired, and
thus prevented a decision of the question whether there remained
to the defendants a right to redeem which would have been a title
good against strangers to the State's title.

We think it clear the cases are widely different. *Griffin* v.
*Creppin*, *Chandler* v. *Wilson*, and the case at bar are all cases
where one party represented the original title, and without denying
the state's superior title, did deny that the other party had acquired
that title, and insisted that there still remained to him enough of

the original title to maintain the action against strangers. In *Hodgdon* v. *Wight* there were no such contentions. There was no decision against them. There was no occasion for such a decision since, so far as the report of the case shows, the defendants did not invoke as a title a right to redeem under the statute of 1848. They contested the original forfeiture only. But, whatever be the view now taken of that case, it is now declared after full and deliberate re-consideration, that the decisions in *Griffin* v. *Creppin,* 60 Maine, 270, and in *Chandler* v. *Wilson,* 77 Maine, 76, are affirmed, and that so far as the opinion in *Hodgdon* v. *Wight,* 36 Maine, 326, and the dicta in *Adams* v. *Larrabee,* 46 Maine, on page 518, also cited by the defendants, conflict with those decisions and the one now made, they are overruled.

We may add that we think the defendants must be mistaken in their belief that in reliance upon *Hodgdon* v. *Wight* many and large investments have been made in tax titles based upon sales and deeds like those in this case. We do not see how the case of *Hodgdon* v. *Wight* should lead such investors to believe that it was not necessary for them to take care that the sale and deed from the State to themselves and their predecessors were effectual to convey to them the State's title. It is a familiar and long-known legal principle that if the description in a conveyance be so uncertain that it cannot be known what land was intended to be conveyed, the conveyance is void. If such investors did not acquire even the State's title, they are not injured in the least by any decision of this court holding that the original owner, notwithstanding his default, still had a heritable and conveyable interest in the land which continues in him, and his successors, until the State sees fit to effectually convey its own title. What claims such investors may have upon the State by reason of the inefficacy of the sales and conveyances to pass its title, are matters solely between them and the State. However much we may regret the losses sustained by reliance upon such sales and deeds we cannot consider them here. This court has never decided that such sales and deeds were effectual to pass the State's title in any case where the question was raised.

An argument ab inconvenienti is also urged,—viz., that such a construction of the statutes will cripple the State's revenues by encouraging the owners of wild land in unincorporated places to allow the taxes upon their land to remain unpaid. We have given this argument full consideration and have scanned the statutes the more carefully by reason of it, but we think it is overborne by the language of the statutes as interpreted by previous decisions. The inconvenience must be left to the legislature to remedy.

Some comment was made, in argument, upon the fact that since the State deed to McCrillis in 1849, he and his successors have paid the successive annual taxes upon the demanded land. The defendant, however, does not, and could not successfully, claim that under the law of this State such payment of taxes gives him any title against the record owner. The land is wild land and the evidence does not show such an actual, visible, exclusive and continuous occupation as is necessary to work a disseizin of the record owner. *Slater* v. *Jepherson*, 6 Cush. 129; *Parker* v. *Parker*, 1 Allen, 245; *Chandler* v. *Wilson*, 77 Maine, 76; *Hudson* v. *Coe*, 79 Maine, 83. The payment of taxes under such circumstances is no evidence of disseizin and gives no color of title. *Little* v. *Megquier*, 2 Maine, 176. It was also suggested in some cases, argued at the same time, that the equities of the case are with the defendants, since they and their predecessors have paid the taxes for so many years, and the plaintiff and his predecessors have paid no taxes since 1844, and that the court should find a way to give effect to those equities. On the other hand, it was suggested that the defendants and their predecessors have probably taken from the land far more in value than all the sums paid out by them. Of course, all such suggestions are unavailing. Whatever our sympathies, we must ascertain and declare the law as we find it to be, however harshly it may seem to operate. The questions raised in this case are not questions of equity, but purely questions of what is the fixed legal rule of property, established by positive enactment and by apposite judicial decisions, as to the rights of a land owner to redeem land forfeited for non-payment of taxes.

We have stated and discussed at some length the contentions

and arguments advanced, in the hope of making an exposition of the law that will solve some of the questions mooted. In doing so we may have written more or less dicta, but our decision so far is only this:—that under the cited statutes of 1841 and 1848 the original owner of land in an unincorporated place, forfeited to the State for non-payment of state taxes, still has a heritable and conveyable interest in such land, good against strangers and continuing as against strangers until the State cuts it off by an effectual sale and conveyance of its own title;—and that the alleged sale and conveyance set up in this case, as made by the State, are not effectual and do not extinguish such interest of the original owner. What rights in the demanded land the State may still have, or how it may, under present or future legislative enactments, enforce those rights,—or how the defendants can acquire those rights, or what other relief they can obtain,—are not decided nor considered.

The only remaining question is, what of the title of the former owners the plaintiff deraigns from them. The two parcels demanded are Lots Four and Sixteen in the Township named. The evidence shows a complete chain of title, prima facie at least, from the State to the plaintiff of one-undivided half of each lot and no more. That the evidence does show so much is not seriously denied.

According to the terms of the report, the mandate must be,

*Judgment for the plaintiff for one-undivided half of each of the demanded lots. Damages to be assessed at nisi prius by the presiding justice.*