The Central Lithographing & Engraving Co. vs. Moore.

THE CENTRAL LITHOGRAPHING & ENGRAVING COMPANY, Respondent, vs. MOORE, Appellant. ·

*September 27 — December 3, 1882.*

*(1–3) Contract for work and labor, or sale? Destruction of goods by fire: Insurance. (4) Court and jury: Construction of contract: Immaterial error.*

1. A contract to manufacture certain lithographs and engravings as advertisements for the especial, peculiar, and exclusive use of a theatrical manager, adapted to the names and characters of his performances, is a contract for work and labor, and not a sale.

2. Where such lithographs and engravings have been manufactured and set aside for such manager according to the contract, but he has failed to pay for them and take them away within the time agreed, their subsequent destruction by fire without fault of the manufacturer does not affect the right of the latter to recover the contract price of the work.

3. And the fact that the manufacturer has procured insurance on the goods and collected the amount thereof from the insurer, does not prevent his recovery of the difference between the amount so collected and the amount due on the contract.

4. The submission to the jury of questions as to the construction of a contract, properly to be determined by the court as questions of law, is an immaterial error where the findings of the jury have been adopted by the court by refusing to set aside the verdict.

APPEAL from the Circuit Court for *Winnebago* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Jackson & Thompson*, and oral argument by *H. B. Jackson*.

For the respondent the cause was submitted on the brief of *Weisbrod, Harshaw & Nevitt*.

ORTON, J.    By two certain written agreements, one dated September 15, and the other November 2, 1885, the plaintiff agreed to manufacture a large quantity of engravings and lithographs for theatrical purposes, for the defendant and for his special use, to be taken and paid for during the

theatrical season of 1885–86, and all of the work was to be completed and ready for delivery by the 15th day of December, 1885. A large portion of the goods were taken and paid for during the theatrical season above stated, and the remainder was ready for delivery by the 15th day of December, 1885, and during that theatrical season, and was not called or paid for until it was burned up on the 26th day of May, 1886, on the premises of the plaintiff, where it was piled up and set apart for the defendant. The plaintiff had procured insurance on this remainder of the work, and received part of what was due on the contracts, for the loss, from the insurance company. This suit is brought to recover the balance unpaid. The jury found that the plaintiff had manufactured the goods ready for delivery at the time fixed in the contract, and had them ready for delivery at all times thereafter until the fire occurred; and that the hand-colored proofs under one contract, and the quality of the paper under the other, were accepted by the defendant as sufficient; and that he also accepted a part of all the different kinds of work, and paid for the same, during the theatrical season; and that the theatrical season ended on the 1st or 5th day of May, 1886. The only ambiguity in the contracts was as to when the theatrical season ended or was to end, and that the jury has supplied, and we think on sufficient evidence, by the last above finding.

The jury found, also, that it was agreed and understood that the title of the property should pass to the defendant the 15th day of December, 1885, the time the work should be finished, and that manufacturing the goods and setting them apart subject to the defendant's order, it was mutually understood, should be delivery to the defendant. These two findings dispose of questions of law which depend upon the meaning, construction, and legal effect of the written contracts, and they ought not to have been submitted to the jury. But the court sufficiently ruled the same way,

by refusing to set the same aside and to grant a new trial, and the verdict of the jury in this respect has done no harm.

The learned counsel on both sides, and the court below, treated this transaction as a *sale* of personal property. It was not a sale. When the contracts were entered into there was nothing *in solido* to be the subject of a sale. The mere paper, as the basis of this valuable work of mechanical art, was not only of insignificant value, but was not the subject of sale. The defendant did not wish to buy blank paper, and the plaintiff had none to sell. The plaintiff was to manufacture these engravings and lithographs for the especial, peculiar, and exclusive use of the defendant in his business as a theatrical manager. They were advertisements adapted to the names and characters of his theatrical performances. It was the plaintiff's work of skill that gave the property produced by it any value. It was work and labor performed according to the order and direction of the defendant, and according to the terms of the contracts. When the required works were produced and ready to be taken away by the defendant and paid for, it was then not a sale. The plaintiff did not own them, and did not wish to own them, for they were of no use or value whatever to him, and were only of use and value to the defendant. When the job was completed according to the contracts, then the defendant was under legal obligation to take them away and pay the amount agreed upon, during the theatrical season which ended May 5, 1886. If he does not do this, what are the legal rights of the parties? Is there any question about delivery or acceptance? Clearly not. It makes no difference with the plaintiff whether the defendant takes them away or not, for he is entitled to be paid for the job, or for his work according to the contracts. The contracts are that the works shall be paid for "as they are delivered;" that is, as they are delivered during the theat-

rical season of 1885-86. After that the money is due at all events. The defendant is liable because he has not accepted the work, and taken it away, and paid for it, according to the contracts. It is not even property out of which the plaintiff could reimburse himself, for it is of no value to him or to any one else except the defendant. How long must the plaintiff wait? The money is due, and he may sue for it. These are, especially, contracts for *work* and *labor* of this peculiar kind, and the transaction is more clearly not a sale than almost any other where the new thing is produced by work and labor for another. For in such cases the article produced is generally of some considerable value to the mechanic, or it may be sold in the market. But not so here. But the contracts themselves call it *work* and *labor*. In both it is that the " party of the first part agrees to lithograph, in a workman-like manner, for the party of the second part, the following described work." They provide that the party of the first part shall *print*, *engrave*, and *lithograph* for the other party the various kinds of work. The plaintiff is stated to be lithographers, woodengraves, printers, and binders.

These contracts may be likened to a job that a printer does for another, and according to his directions, when the work consists of hand-bills or advertisements set up in attractive form, and adapted exclusively to the business of such other person, and useful to no one else. The job is completed according to contract, and the other party has failed to take them away and pay for them. May not the printer sue? Or an artist paints the likeness of another according to contract. It is not called for, but left a long time on the artist's hands. The work was well done and acceptable to the person who ordered it. It is of no use to the artist, or of any value to any one except to him whose likeness or picture it represents. In all these cases it is too clear for argument that the transaction is not governed by

the law of *sales*, but of work and labor.    In these supposed cases, if the hand-bills and advertisements in the one case, and the likeness in the other, after the time for taking them away and paying for them had expired, are burned up, whose loss is it?    They are put by themselves in a safe place until called for.    Why should the printer or the artist lose by the fire, and the person who ordered the work done, and who is in default in not taking it away and paying for it, and by whose negligence it was left with the artist where it was burned without his fault, suffer no loss?    The law works no such injustice.    These cases are alike in principle.    They are clearly analogous.

The defendant, by his own default and neglect, left his engravings and lithographs with the plaintiff, and under his care and custody, as a naked bailee, for some time after the time he agreed to take them away and pay for them, and they were burned.    They were piled together and set apart for the defendant in a safe place, and he had accepted the work as being according to the contract.    There can be no doubt, as we have said already, that the plaintiff had an action for the money agreed to be paid, after the time for payment had expired.    In that view, the fact that the work was afterwards burned up is immaterial, unless caused by the plaintiff's negligence.

But, in analogy to a sale of the property, it was left in the plaintiff's care by the fault of the defendant, and if there was any loss by fire he must suffer it.    Where several articles of the same kind were purchased, and only one taken away, and the others left with the vendor, *to be called for* at any time the vendee chose, the title of the property passed to the vendee at the time of the sale.    *Bullis v. Borden*, 21 Wis. 139.    So the title of this property passed to the defendant, December 15, 1885, when it had all been manufactured according to the contracts and part of it taken away, and after that remained with the plaint-

iff or under its care, *until called for*, during that theatrical season. Where one had stored in a certain warehouse a large number of barrels of flour, and sold the same to another, to be paid for "when used or disposed of," a part of them had been disposed of or taken away and paid for. Most of the remaining barrels were destroyed by fire with the warehouse. It was held that the property burned belonged to the purchaser, and that he was liable at once for the price of that burned up. *Powers v. Dellinger*, 54 Wis. 389.

There is another principle of liability in such a case, and that is that the defendant was liable for not accepting and taking away the goods manufactured after the time he was required by the contracts to do so, as in *Ganson v. Madigan*, 15 Wis. 144. The defendant had ordered a reaping-machine of the manufacturer of a certain kind. The machine was what the defendant had ordered, and the plaintiff had set it apart for the defendant, so as to be capable of identification. It was held that the plaintiff could have sold the machine to satisfy his lien upon it, and recover the balance of the purchase price, or could have held it subject to the defendant's order, and recover the whole price. In *Mixer v. Howarth*, 21 Pick. 207, where it is an agreement with a workman to put materials together and construct an article for the employer at an agreed price, it was held that it was not a sale until actual delivery and acceptance, and the remedy was for not accepting it on the agreement. To the same effect are *Spencer v. Cone*, 1 Met. 283; *Goddard v. Binney*, 115 Mass. 450. In *Atkinson v. Bell*, 8 Barn. & C. 277, the defendant ordered certain frames, with alterations made on them, of the patentees, and when ready for delivery refused to accept them. It was held that the plaintiff might recover for his not accepting them. To the same effect is *Lee v. Griffin*, 1 Best & S. 272, where a person ordered a set of artificial or false teeth made to fit his mouth.

It was held that the plaintiff, might have recovered from the defendant for his not accepting them, if the contract had been in writing; and *Mead v. Case*, 33 Barb. 202, was to the same effect, where blocks of marble were directed to be finished, polished, and lettered with inscriptions as a monument.

But finally, on this general question, this court recently decided that a transaction or contract not by any means so clearly not so, was not a sale, but for work and labor. In *Meincke v. Falk*, 55 Wis. 427, the article to be manufactured was a family carriage, specially ordered, of a particular model. The plaintiff's skill, labor, and workmanship were the special inducement in giving the order, and without such order the plaintiff would not have manufactured it, and it was not kept as a part of his general stock. The carriage was completed according to the contract or order, and the defendant refused to accept it. The action was for the value of the carriage, and for storing it for the defendant, on the ground of non-acceptance. In that case Mr. Justice CASSODAY reviewed very fully the authorities on the question, which were conceded to be somewhat in conflict. It was held that it was not a sale of the carriage, but a contract for work and labor, and that, therefore, the verbal contract was not within the $50 statute of frauds.

The complaint in this action was not for the price of the goods, as *sold* to the defendant, but the ground of the action is that "the defendant has never ordered the same shipped, nor taken or paid for the same, or any part thereof;" in effect, that the defendant had refused to accept the same. This case, therefore, falls directly within the authorities above cited. Although the instructions of the court and the special findings of the jury were more particularly applicable to this transaction as a sale of goods, yet many of the findings are appropriate to work and labor performed by the plaintiff for the defendant in producing the goods; such as,

that the plaintiff *manufactured* the goods called for in the contracts, and in the time specified therein, and had manufactured them ready for delivery at the time specified and at all times thereafter until the said fire, and that the defendant had accepted and paid for some of all the different kinds of the work manufactured. Two other findings, although on the question of delivery of the goods as if sold, and more as a matter of law than of fact, as legal conclusions, may not be inappropriate to the character of the transaction as for work and labor. The jury found that the title of the goods passed to the defendant on the 15th day of December, 1885, and that manufacturing the goods and setting them apart, subject to the defendant's order, was understood to be a delivery to him. These are just and proper conclusions in this case, treating it as one for work and labor and not for a sale of the property. The work was subject to the order or acceptance of the defendant, and he ought to have accepted it and paid for it before the fire, and it was merely left with the plaintiff by the defendant's default and at his risk. The plaintiff merely held the work as bailee, and subject to the lien of the consideration to be paid. He had no other interest in the work.

In the above view taken of the case, the fact that the plaintiff insured the goods as nominal owner, and collected the insurance, is not material as bearing on the question of their ownership, for the plaintiff had a right to have them insured to protect its lien, and doing so as nominal owner would be no evidence that the defendant ought not to have accepted them and paid for them before the fire, and that the loss, if any, was not his loss. A vendee before he accepts the goods may insure them, and it is no evidence that he has waived his right to reject them if they are not according to the contract. *Bacon v. Eccles*, 43 Wis. 227. But the defendant ought not to complain of the insurance. It

was greatly in his favor. He would have lost them altogether had not the plaintiff insured them for their mutual benefit. The goods owned by any one else than the defendant would have been of no value whatever, either for insurance or sale. The plaintiff, by his forethought and prudence, saved the defendant from a large portion of the loss which he would have been compelled to pay to the plaintiff, and lessens *pro tanto* the amount of his recovery in this action.

This opinion is much longer than it would have been if the case had been tried upon the correct theory. It would not answer to allow it to go into the reports as a sale, in contradiction of *Meincke v. Falk*, 55 Wis. 427. The result was warranted by the evidence just the same, however, and the judgment is correct, and the errors assigned become immaterial.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 43 N. W. Rep. 1124.— REP.