[No. 26589.   Department One.   December 2, 1937.]

WASHINGTON PRINTING & BINDING COMPANY, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 73 P. (2d) 1326.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*A. N. Whitlock, E. C. Matthias, F. T. Merritt, Robert S. Macfarlane,* and *Dean H. Eastman,* for respondent.

SIMPSON, J.—This is an appeal from a judgment of the superior court refunding to plaintiff $212.75, representing retail sales taxes collected by the tax commission upon what it contends were sales of freight tariffs and supplements furnished to the North Pacific Coast Freight Bureau upon order.

The tax commission levied this amount of assessments against the plaintiffs as representing the two per cent sales tax upon the total charge of $10,636.23 made by plaintiff to the bureau. Plaintiff paid the tax under protest and then petitioned the tax commission for an abatement and refund of the tax, alleging that the transaction in question was a service rendered and not subject to the retail sales tax. This petition was denied. Plaintiff then appealed to the Thurston county superior court. After a trial to the court, a judgment was entered reversing the tax commission's order and allowing a refund to plaintiff of the amount in question. From this judgment, this appeal was taken.

In its appeal, the appellant urges that the trial court erred in holding that the transaction in question did not constitute a sale in contemplation of our retail sales tax law, Title 3, chapter 180, Laws of 1935, p. 721

(Rem. Rev. Stat. (Sup.), § 8370-16 [P. C. § 7030-76] *et seq.*).

The facts not in dispute are as follows: The North Pacific Coast Freight Bureau, hereinafter referred to as the bureau, is maintained by and represents various railroads in the state of Washington. The bureau prepares, compiles, publishes, and distributes to its members schedules of freight tariffs and supplements thereto, which the railroads are from time to time required to file and publish. The respondent, from time to time, printed these various tariffs and supplements thereto. Tariffs so printed are not compiled by respondent, but are reproduced and copied from manuscripts compiled, prepared, and owned by the bureau, being printed solely for and delivered to it.

Respondent charges the bureau a stipulated price for the printing of such tariffs, the price depending upon the alterations made and the number of copies of each tariff or supplement printed. Respondent furnishes the paper upon which the tariffs are printed and the ink used in such printing; the price charged includes material furnished and consumed in the printing of the schedules. The value of the material furnished by respondent approximates fourteen per cent of the total price charged for the printing.

The tax was imposed for tariffs and supplements printed during a period from May 1, 1935, to December 1, 1935.

The question to be determined is whether or not the transaction was one of selling personal property at retail within the meaning of the retail sales tax law, being Laws of 1935, chapter 180, §§ 16 and 17, p. 721, Rem. Rev. Stat. (Sup.), §§ 8370-16 and 8370-17 [P. C. §§ 7030-76, 7030-77]. These sections are:

§ 8370-16. "From and after the first day of May, 1935, there is hereby levied and there shall be collected a

tax on each retail sale in this state equal to two per cent of the selling price."

§ 8370-17. "For the purposes of this title, unless otherwise required by the context:

"(a) The term 'selling price' means the consideration, whether money, credits, rights, or other property, expressed in the terms of money, paid or delivered, by a buyer to a seller for the transfer of the ownership of, or title to, property, all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes or any other expense whatsoever paid or accrued and without any deduction on account of losses;

"(b) The term 'seller' means every person engaged in the business of making sales at retail or retail sales, whether as agent, broker, or principal;

"(c) The meaning attributed, in title II of this act, to the words and terms . . . 'sale,' 'sale at retail,' 'retail sale,' . . . shall apply equally in the provisions of this title."

The definitions of "sale" and "sale at retail" are contained in Laws of 1935, chapter 180, Title II, § 5, p. 711, Rem. Rev. Stat. (Sup.), § 8370-5 [P. C. § 7030-65], in subds. (c) and (d) of that section.

"(c) The word 'sale' means any transfer of the ownership of, or title to, property for a valuable consideration . . .

"(d) The term 'sale at retail' or 'retail sale' means every sale of tangible personal property other than a sale to one who purchases for the purpose of resale in the regular course of business or for the purpose of consuming the property purchased in producing for sale a new article or substance, of which such property is an ingredient or component, or a chemical used in processing same. . . ."

The supreme court of Illinois in the case of *Burgess Co. v. Ames,* 359 Ill. 427, 194 N. E. 565, held that blueprinters, photostaters and commercial photographers were not engaged in the business of selling tangible

personal property at retail, within the meaning of and as defined by the Illinois statutes, Smith-Hurd Ann. Stat., chapter 120, § 440, which reads as follows:

" 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

In that case, it appeared that the business of the blueprinters consisted of making positive prints from tracings or drawings furnished by the customer, the reproductions being upon sensitized paper. Photostaters likewise use sensitized paper, reproducing by photographic processes legal or other documents, drawings, sketches, or whatsoever the customer desires to have reproduced with exactness.

The court, in commenting upon their business, said:

"The raw material with which blue-printers and photostaters work is sensitized paper of such a chemical character as to be destroyed for any further use when exposed to light. It is alleged in the bill and admitted by the motion to dismiss that they have no property right in the sketch, drawing or other document which is brought to them to be reproduced or copied. By the use of their apparatus and the destruction of sensitized paper they produce for each individual customer the required copies of the customer's own property. It is the contention of the department that the paper, with the reproduction on it, is the subject of sale; but this can hardly be true under the act we are considering, because the paper is destroyed when the exposure is made, and it has no further use or value to any one other than the person interested in that particular reproduction. We can perceive no logical difference between the paper upon which a photostatic copy of something is made or a blue-print produced, and that paper which a lawyer uses for writing a will or deed, a doctor for writing a prescription, or an abstractor for showing a chain of title. The paper is a mere incident; the skilled service is that which is required."

Later, this rule was followed in the cases of *A. B. C. Electrotype Co. v. Ames*, 364 Ill. 360, 4 N. E. (2d) 476, and *Adair Printing Co. v. Ames*, 364 Ill. 342, 4 N. E. (2d) 481.

The definition of work and labor, as distinguished from a sale, is well stated in *Central Lith. & Eng. Co. v. Moore*, 75 Wis. 170, 43 N. W. 1124, 17 Am. St. 186, 6 L. R. A. 788:

"The learned counsel on both sides, and the court below, treated this transaction as a *sale* of personal property. It was not a sale. When the contracts were entered into there was nothing *in solido* to be the subject of a sale. The mere paper, as the basis of this valuable work of mechanical art, was not only of insignificant value, but was not the subject of sale. The defendant did not wish to buy blank paper, and the plaintiff had none to sell. The plaintiff was to manufacture these engravings and lithographs for the especial, peculiar, and exclusive use of the defendant in his business as a theatrical manager. They were advertisements adapted to the names and characters of his theatrical performances. It was the plaintiff's work of skill that gave the property produced by it any value. It was work and labor performed according to the order and direction of the defendant, and according to the terms of the contracts. When the required works were produced and ready to be taken away by the defendant and paid for, it was then not a sale. The plaintiff did not own them, and did not wish to own them, for they were of no use or value whatever to him, and were only of use and value to the defendant."

Of like import is the definition in *Beck & Pauli Lithographing Co. v. Colorado Milling & El. Co.*, 52 Fed. 700.

The Illinois statute defining "sale at retail" is, in effect, the same as ours, in that, to constitute a sale, there must be a transfer of the ownership of or title to

property for a valuable consideration. Before the tax can be imposed, it must appear, first, that the seller was the owner of or had title to the property, and, second, that he parted with such ownership or title for a valuable consideration. Respondent never had title to or ownership of the tariffs. They were prepared and owned by the bureau.

All of the property that respondent had title to was the paper and ink used in printing the tariffs. This small amount of material was practically destroyed by the reproduction of the tariffs and had no further value to anyone other than the bureau. Respondent was not selling its paper and ink to the bureau, but was furnishing its skill and labor and the use of its machinery.

Appellant has called our attention to the case of *Cusick v. Commonwealth,* 260 Ky. 204, 84 S. W. (2d) 14, where the court upheld the imposition of a sales tax upon photographs. The photographers mentioned were engaged in a business that required only skill, science, and labor. However, that case is not authority here, for the reason that the Kentucky statute under consideration defining sales is entirely different from ours, in that it does not require transfer of title or ownership in order to constitute a sale.

■ Rem. Rev. Stat. (Sup.), § 8370-208, Laws of 1935, chapter 180, § 208, p. 844, contains a rule-making power for the tax commission:

"The tax commission shall make and publish rules and regulations, not inconsistent with this act, necessary in enforcing its provisions, which rules and regulations shall have the same force and effect as if specifically included herein, unless declared invalid by the judgment of a court of record not appealed from. . . ."

Under such authority, the tax commission made and published a rule relating to the printing industry as follows:

"Printers are subject to the business and occupation tax as follows:

"Manufacturing:—Taxable under the 'Manufacturing' classification upon the value of products manufactured with respect to the printing from their own materials of advertising circulars, books, briefs, envelopes, folders, posters, racing forms, shopping guides, tickets and other printed matter. Such value is determined by the gross proceeds of sales. . . .

"Sale by printers of advertising circulars, books, briefs, envelopes, folders, posters, racing forms, shopping guides, tickets and other printed matter to persons who do not resell such articles in the regular course of business but who either consume them, lease them, or distribute them free of charge, are subject to the retail sales tax. . . ."

Appellant now urges that it could impose and collect the tax in controversy here because of such rule.

The tax commission cannot, by such rule, impose a tax upon property or a transaction that is not mentioned in the statute as taxable. The rule-making power is given only for the purpose of empowering the commission to carry out the provisions of the statute.

"The power vested in the commission to prescribe rules and regulations for making returns for ascertaining assessment and collection of the tax imposed by the act does not vest in the commission any discretion whatsoever in the matter of requiring the payment of a sales tax by any one other than such as are designated in the act. It is true that an administrative body within prescribed limits, and when authorized by the lawmaking power, may make rules and regulations calculated to carry into effect the expressed legislative intention." *Western Leather & Finding Co. v. State Tax Commission of Utah*, 87 Utah 227, 48 P. (2d) 526.

The judgment of the trial court was correct when it held that the transaction in question was a service and not a sale within the meaning of our retail sales tax law.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and BLAKE, JJ., concur.

[1]Reported in 73 P. (2d) 1312; 77 P. (2d) 382.