(No. 25203.—▮▮▮▮▮▮)

THE HOFFMAN AND MORTON COMPANY, Appellant, *vs.* THE DEPARTMENT OF FINANCE, Appellee.

*Opinion filed February 13, 1940.*

FARTHING, J., dissenting.

MAURICE A. FRANK, for appellant.

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, MORTIMER PORGES, and PHILIP J. SIMON, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal to review the order of the circuit court of Cook county quashing a writ of *certiorari* sued out by appellant to review an order of the Department of Finance assessing a tax and penalty of $3657.75 against it under the Retailers' Occupation Tax act.

Appellant was an Illinois corporation doing business in Chicago until June 30, 1936, when it transferred its assets

to a partnership and ceased doing business. It made regular monthly returns under the Retailers' Occupation Tax act from July 1, 1933, up to and including June 30, 1936. Those returns showed gross sales for each month from which certain deductions were claimed for services, goods sold for resale and interstate sales.

On April 4, 1938, appellee, the department, without any previous notice to appellant, fixed an additional assessment and penalty in the amount above stated against appellant, based on a blanket disallowance of all deductions which appellant had taken and claimed in the returns it had filed. It then notified appellant of such assessment. A protest was made within ten days and a hearing was had under the act. On that hearing the Department of Finance offered in evidence the additional assessment and penalty as making out a *prima facie* case. Morton Hoffman, a former president of appellant, testified that the returns filed by it were made according to its books and records. It was not shown that he personally kept the books and records or that the returns were made under his supervision. His testimony was received over the objection of the department that the books and records would be the best evidence. He testified that shortly after the corporation discontinued doing business, his brother, Leo Hoffman, a stockholder of the company, took the books and records with him to the Pacific coast. As the books were not produced, the assessment and penalty were entered on the ground, as claimed by the department, that it had corrected appellant's returns in accordance with section 4 of the Retailers' Occupation Tax act, that the corrected returns were made *prima facie* correct by the statute, and, as appellant had offered no evidence to rebut the *prima facie* case, the final assessment was proper.

Appellant argues, here, (1) that an assessment based on a blanket disallowance of deductions claimed in the returns filed by the taxpayer each month is improper where

the taxpayer's books are not in evidence and no audit of them is attempted by the department for more than two years after the filing of the return by the taxpayer; (2) that a taxing body cannot levy a deficiency assessment based on a blanket disallowance of all deductions taken by a taxpayer in returns properly filed, where such returns are not questioned and no audit of them attempted until after the expiration of four years and seven months following the filing of the first return. It is also argued that section 4 of the Retailers' Occupation Tax act, as revised July 1, 1937, if it is to be taken as authorizing such an additional tax and penalty, is null and void in that it is a delegation of judicial power to an administrative officer or body, takes property without due process of law and violates appellant's right of trial by jury. It is also argued that the act is void as incomplete, uncertain and vague.

Section 4 of the Retailers' Occupation Tax act, (Smith-Hurd Stat. 1935, chap. 120, par. 443, p. 2768,) in force during the time the returns under consideration here were filed, provided: "If the department has reason to believe, and does believe, that any return is incorrect, after notice to the person making the return and a hearing, it shall correct such return according to its best judgment and information, which return, so corrected by the department shall be *prima facie* correct. If the tax computed upon the basis of the gross receipts, as fixed by the department is greater than the amount of tax due under the return as filed, the person making such return shall pay the additional tax as computed by the department, together with a penalty of five per cent (5%) thereon, within ten (10) days after notice of the amount of such additional tax and penalty is mailed to such person," etc. Section 7 of the act, in force during the time the returns under consideration were made, provided: "Every person engaged in the business of selling tangible personal property at retail in this State, shall keep records and books of all such sales of tangible personal

property, together with invoices, bills of lading, sales records, copies of bills of sale, and other pertinent papers and documents. Such books and records and other papers and documents shall, at all times during business hours of the day, be subject to inspection by the department or its duly authorized agents and employees. Such books and records shall be preserved for a period of at least two (2) years, unless the department, in writing, authorizes their destruction or disposal at an earlier date." This section was amended in 1937, (Laws of 1937, p. 1051; Ill. Rev. Stat. 1937, chap. 120, par. 446, p. 2724,) by inserting three years in the place of two years for the preservation of books.

Section 8 of the act of 1933 remains as originally enacted and in so far as pertinent to the present inquiry, reads as follows: "For the purpose of ascertaining the correctness of any return, or for the purpose of determining the amount of tax due from any person engaged in the business of selling tangible personal property at retail, the department or any officer or employee of the department designated in writing by the director thereof, may hold investigations and hearings concerning any matters covered by this act, and may examine any books, papers, records or memoranda bearing upon the sales of tangible personal property of any such person and may require the attendance of such person or any officer or employee of such person, or of any person having knowledge of such sales, and may take testimony and require proof for its information. * * * The department or any officer or employee thereof shall have power to administer oaths to such persons."

The purpose of the construction of a statute is to ascertain and give effect to its true intent as expressed by the General Assembly. (*Burke* v. *Industrial Com.* 368 Ill. 554; *Sycamore Preserve Works* v. *Chicago and Northwestern Railway Co.* 366 id. 11.) Appellant contends, here, that, having kept his books as required by the statute, and having disposed of them as he had a right to do, to construe

the act as providing, under such circumstances, that a so-called corrected return, levying an additional tax and penalty against him, shall be *prima facie* correct, is to deprive him of due process of law and unfairly prevent his meeting a charge which he could have met had it been made within the time contemplated by the act.

The provisions of section 8 of the act, authorizing the department to hold hearings and examine the books and papers of the taxpayer "for the purpose of ascertaining the correctness of any return," and the provisions of section 7 requiring that the taxpayer shall for two years after reports keep his books, and that they shall at all business hours be open for inspection, contemplate that the department would, within a reasonable time, proceed to examine the accounts and books of the taxpayer, and if it had any doubt as to the correctness of his return, correct the same on hearing. That such was in the minds of the legislature is further evidenced by the fact that section 4, in 1937, (Laws of 1937, p. 1034,) was amended to require that the department "as soon as practicable after any return is filed" examine the return and correct it according to its best judgment and information.

We are of the opinion that such intention of the legislature in the original act is shown by the fact that the period for which the taxpayer's books were required to be kept was two years, now three. It could scarcely be said that the General Assembly contemplated that after the taxpayer had, by permission under the act itself, destroyed or otherwise disposed of his books, the department could demand that they be examined, and if not produced, penalize the taxpayer although his monthly reports had been on file with the department for more than two years, during which time he is required to keep his books. Under the act as it existed during the time when appellant was in business, its books and records were required to be kept at all business hours open to the Department of Finance, or anyone designated by it, for their examination, and this was done. That

the provisions of section 7 of the act of 1933, fixing the period during which the taxpayer shall keep his books, were deemed important by the General Assembly as fixing his rights and the rights of the department, is evidenced by the amendment in 1937 which extended such period from two to three years. Laws of 1937, p. 1051.

In this case, the additional tax and penalty were not assessed until four years and seven months after the first monthly report in which these deductions now disallowed were claimed. Counsel for the department argue that the State is not subject to a Limitations act, but there is not here a question of subjecting the State to a Limitations act other than that which it has by clear intent imposed upon itself by this statute. It is not even argued that the General Assembly may not limit the period in which the department may take action. No request was made to examine these books until February, 1938, but a few weeks before the additional tax and penalty were entered in this case, and a few months before appellant went out of business. As to most of those reports, therefore, more than two years had elapsed without attempt to examine appellant's books, though the claimed deductions which the department now seeks to disallow were before it in all those reports.

The department argues that the burden is on the taxpayer to prove any claim to exemptions, and this is, generally, true, but this is not a case for the application of that rule for the reason that appellant, having, without fault, disposed of its books without examination by the department, is thus, because of such failure to examine the books, placed in a position where it is not now in possession of evidence to prove the correctness of the claimed exemptions. This is a case where the department, after the period has gone by in which the taxpayer may assume and discharge that burden, and after he has, without fault on his part, disposed of his books, has issued an additional assessment and penalty. The disallowance of these exemptions

or deductions is sought to be fastened upon him without the opportunity of assuming the burden which would be upon him, but for the tacit permission in the act itself to dispose of his books after a two-year period. We are of the opinion that the statute, neither in its original form nor at any time since, contemplated or contemplates the right or power in the department to make a corrected return under the facts shown in this case which shall be considered *prima facie* correct.

Nor is this result an estoppel against the State, as is thought, other than that which is provided in the statute itself, when reasonably construed. We are of the opinion that, so construed, the General Assembly intended, by fixing the time during which the books must be kept, that a corrected return to be *prima facie* correct, must be made during the period in which the books were available or required to be preserved.

The language of the statute making the return, so corrected, *prima facie* correct, contemplates that such return should be made upon an examination of the books, within a reasonable time after receiving the report which the department believes incorrect, as set out in section 4 of the act in force during the time under consideration here. A reasonable construction of that language requires that a corrected return, "according to its best judgment and information," be a return made by the department after it sought and procured the information which the statute, by requiring that the books be kept for a period of two years, contemplates that it shall secure.

It must follow that, in a case such as this, the department may not make a corrected return that shall be considered *prima facie* correct, without an attempt to examine the taxpayer's books. The General Assembly did not contemplate that, after lulling the taxpayer into a sense of security by permitting destruction of his books after a period of two years, the department may make a return that shall

stand as *prima facie* correct. The State does not enact laws for the entrapment of its citizens. The corrected return in this case was not according to the best information of the department and is invalid.

The judgment quashing the writ of *certiorari* is reversed and the cause remanded to the circuit court, with directions to quash the record of the department.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting:

The majority opinion holds that the failure of the department to correct returns within two years after they were filed, limited its right to make corrected returns which were *prima facie* correct under section 4 of the Retailers' Occupation Tax act. Returns of taxpayers must be corrected "as soon as practicable" under this section. Section 7, an entirely separate section, permits a taxpayer to destroy his books and records after two years, now three, or sooner with the consent of the department, in writing. The majority is of the opinion that this latter section operates as a Statute of Limitations against the State through its department of finance, so that the returns as corrected are no longer *prima facie* correct. This casts the burden of proving that a return is incorrect onto the department after the taxpayer has destroyed his books, and virtually does away with the liability for the tax. In my opinion the majority interpretation violates fundamental rules of construction. Statutes of Limitation do not operate against the State, unless plainly intended to do so, and the taxpayer is bound to prove that he is entitled to an exemption. Section 4 of the act simply follows the well-settled rule that the burden is on the taxpayer to prove he is entitled to an exemption, when it makes the department's corrected returns *prima facie* correct. The correction must be made "as soon as practicable," and not within two years. The provisions of section 7 need not be construed as a limitation in

order to be given effect. Section 13 of the act makes it a misdemeanor not to keep the required books and records. If they are destroyed after that time, the taxpayer would not be guilty of a crime, but that does not mean that the department may not correct his returns and collect the taxes due, even though the two years have passed. This construction gives effect to all provisions of the act and follows well-settled rules of construction.