(No. 25903.— )

WARSHAWSKY & COMPANY, Appellant, vs. THE DEPART-
MENT OF FINANCE, Appellee.

*Opinion filed June 13, 1941—Rehearing denied September 10, 1941.*

PHILIP R. TOOMIN, and MICHAEL M. PHILLIPS, for
appellant.

GEORGE F. BARRETT, Attorney General, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the
court:

After a hearing the Department of Finance of this State
made a final assessment of $11,094.79 as taxes and pen-
alties due from appellant under the provisions of the Re-
tailers' Occupation Tax act. The return of the department
to a writ of *certiorari* was sustained and the writ quashed
by the circuit court of Cook county, and the taxpayer has
appealed directly to this court.

Appellant is engaged in the business of selling new and
used automobile parts and accessories. The used parts are
obtained by purchasing and dismantling old automobiles.
The various parts of the car are rebuilt or reconditioned by

appellant before being resold. It is the contention of appellant that in reconditioning or rebuilding and reselling the used parts it is engaged in the business of rendering a service rather than in selling tangible personal property, and that such sales are not subject to the tax. This contention is refuted by the testimony of I. R. Warshawsky, president of the company. It appears from this testimony that appellant has five stores in the city of Chicago, and that it also does a mail order business. In connection with the latter appellant issues a catalogue, of which about forty per cent relates to reconditioned or rebuilt parts. Some of the parts, such as batteries, generators, carburetors, fuel pumps, etc., are reconditioned and kept in stock and can be delivered immediately on receipt of the order. Others, such as motors, transmissions, and rear ends of cars are not reconditioned or rebuilt until the order is received, because, Warshawsky explained, the cost of rebuilding these articles is so great it would be economically unwise to keep in stock motors for all kinds and models of cars. Instead, these parts are kept as taken from used cars, and rebuilt or reconditioned after the order is received. For example, if an order is received for the motor of a certain kind of car made in a certain year, such a motor is procured from stock and the work of rebuilding then begun. A flat price is charged for the motor as reconditioned; there is not a charge for an old motor and a separate charge for rebuilding it. These motors are advertised in the catalogue as "Gold Band Motors" and are reconditioned or rebuilt in a standard manner adopted by appellant. Appellant does not receive directions from the customer as to what parts it wants replaced and what parts merely cleaned, etc., but rebuilds motors according to the standard set by it, which is the same in all cases. This is a sufficient showing that appellant sells rebuilt or reconditioned motors, etc., and does not sell old motors and afterwards service them for the purchasers. It is immaterial that the labor involved

and the new parts used in rebuilding a motor greatly enhance the value of the old motor. It is frequently true that the labor involved in making an article costs more than the parts used and that the finished article is worth many times more than the ingredients used in making it. The fact remains that the finished article is the thing that is sold, and that the seller must pay a tax based on his selling price and not merely on the materials used in the manufacture of the article. This question is explicitly covered by the provisions of the act. By section 2 (Ill. Rev. Stat. 1939, chap. 120, par. 441) the tax is measured by three per cent of the "gross receipts" from the sale of tangible personal property at retail. By section 1 "gross receipts" is defined as the "total selling price or the amount of such sales." "Selling price" or the "amount of a sale" is defined in that same section as "the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, services and property of every kind or nature and shall be determined, without any deduction on account of the cost of the property sold, the cost of materials used, *labor or service cost, or any other expense whatsoever.*" In view of this, and our holding that appellant is engaged in the business of selling reconditioned or rebuilt parts, the tax was correctly based on the selling price charged by appellant.

Appellant has made a number of other contentions, the examination of which has caused considerable unnecessary work on the part of this court. In some instances no reference to the abstract or record to support an assertion has been made, and it is too fundamental to require the citation of authority that a court of review will not search the record to find grounds for reversal of a judgment. In other instances, it appears counsel for appellant have deliberately argued matters *de hors* the record. In still others, citations to the abstract do not support the assertions for which they are cited and, at times, such assertions are sup-

ported only by a strained construction of the words there found. Moreover, the statement of facts contained in appellant's brief is so argumentative, misleading and unfair that it was necessary for the Attorney General's office both to restate the facts and to furnish an additional abstract of record. We strongly condemn these practices.

These remaining contentions will be briefly considered. The claim that no allowance was made to appellant for the value of used parts it received as partial payment on its sales of reconditioned parts and that this is a violation of rule No. 15 of the department is without substance. No reference to the abstract or record is given to substantiate this factual charge. Moreover, the value of the property traded in is a part of the selling price, as defined in section 1 of the act, *supra*. Rule No. 15 also so provides but gives the taxpayer the option to wait until this traded-in property is resold before including the value of it in his return. Here, there is no showing that the taxpayer did or did not take advantage of this option.

The contention that it was error to base the audit on "gross sales" instead of on "gross receipts," which is the basis laid down by section 2 of the act, is made for the first time in this court, and the reference to the abstract does not support this charge. It is merely a statement by the auditor for the department that the audit was based on the "gross *taxable* sales." Moreover, neither the record nor the briefs attempt to distinguish between the two types of audits. No broader definition of "gross receipts" can be imagined than that contained in the act, except that it does not include credit sales until collected. There is no showing here that appellant made any sales on credit. Further, the record shows the auditor testified: "This taxpayer has filed an application and has been given permission by the department to report on a gross sales basis and that is the way I made the audit." In view of this appellant is in no position to complain.

Appellant next contends the audit covered the period from March 1, 1935, to July 12, 1937, which is longer than the period of time the taxpayer is required to keep his records. This question is also raised here for the first time. There is no showing the records of appellant had not been kept, except a statement of counsel in appellant's brief without references to the abstract of record. There is here no attempt to penalize the taxpayer for failing to keep records, as in *Hoffman and Morton Co.* v. *Department of Finance*, 373 Ill. 116. This contention must be overruled.

The contentions that the assessment covered the entire month of July, 1937, though the audit covered only until July 12 of that year, and that the taxpayer did not have adequate notice of the final hearing are refuted by the record. Appellant also complains that besides the audit, the auditor also made certain "comments" for the department which it refused to produce at the hearing. There is no showing that such "comments" existed. Moreover, the auditor was cross-examined at length.

The order of the circuit court is affirmed.

*Order affirmed.*