**JACKSON ADVERTISING
CORPORATION**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued June 14, 1988.
Decided Dec. 15, 1988.

Murrough H. O'Brien (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

The respondent, State Tax Assessor, appeals from the judgment of the Superior Court (Cumberland County, Alexander, J.) reversing the final sales tax assessment imposed by the Assessor on the petitioner, Jackson Advertising Corporation (Jackson). The Assessor contends that the Superior Court erred as a matter of law in determining that Jackson had met its burden of proving that the transactions were nontaxable sales of services. We agree and vacate the judgment of the Superior Court.

As a result of its 1985 audit of Jackson, the State Tax Assessor assessed approximately $20,000 in sales tax, interest and penalties on products Jackson created for its clients between 1982 and 1985. In response to Jackson's petition for reconsideration, the Assessor affirmed its initial assessment. Jackson filed a petition for review in the Superior Court pursuant to 36 M.R.S.A. § 151 (Supp.1987) and the Administrative Procedure Act, 5 M.R.S.A. §§ 11001–11008 (1979 & Pamph.1987). In accordance with section 151, the Superior Court conducted a de novo hearing.[1]

Gregory Jackson, the owner of Jackson, was the only witness to testify before the Superior Court. He described his company as a "full-service" advertising agency, performing a range of services for its clients. The agency researches and identifies target markets, plans marketing strategy, develops creative concepts for individual ad-

---

1. Section 151 provides, in relevant part:

Any person who is entitled by law to receive notice of a determination of the State Tax Assessor and who is aggrieved by that determination may petition ... for reconsideration by the [Assessor] ....

....

The State Tax Assessor's decision on reconsideration constitutes final agency action which is subject to review by the Superior Court in accordance with the Maine Administrative Procedure Act, except that the absence of a record shall be resolved exclusively by a hearing de novo on review.

vertisements and lines of products, and performs much of the creative and technical work required to produce radio, television and print advertisements.

Because of the large number and variety of jobs covered by the assessment, the parties stipulated, for the purposes of review, that three projects were representative of both the work performed by Jackson and the projects audited by the Assessor. A videotaped television commercial produced for Gifford's Famous Ice Cream, Inc. represented advertisements created for television and radio (broadcast media). A layout of sketches and copy, reproduced by a printer to provide Eastland Shoe Company with 200 "cooperative advertising kits," represented Jackson's work in print advertising. To represent Jackson's brochure and catalogue work, the parties chose a pamphlet it created to promote "Lakeside at Pleasant Mountain," a condominium project planned by Northland of Maine. The parties further stipulated that the sales value of each advertising category was as follows: broadcast, 31%; print, 34%; brochures, catalogues and miscellaneous, 35%. Gregory Jackson testified as to the planning, aesthetic judgment, creative and technical skills, and materials required for each representative job.

Relying on language set forth in *Community Telecasting Service v. Johnson,* 220 A.2d 500, 503 (Me.1966), and restated in *Measurex Systems, Inc. v. State Tax Assessor,* 490 A.2d 1192, 1195–96 (Me. 1985), the Superior Court determined "that the advertising products here at issue, as was the custom software in *Measurex,* are basically sales of creative and professional advertising services, not products." The Assessor appeals from that judgment.

## I.

■ Initially we note that the Superior Court judgment is flawed by a misconception of the procedural posture of the case. In his opinion, the judge states that "the court's hearing *and determination* is *de novo.*" (emphasis added). Consistent with that pronouncement, the judge proceeded to find the facts and apply the law to those

facts. Although 36 M.R.S.A. § 151 permits a *de novo* hearing for the purpose of providing a substituted record for judicial review, a *de novo* determination, such as that undertaken by the judge in this case, is not authorized. Even with a *de novo* hearing under section 151, judicial review is confined to a "complete review of questions of law and to limited review of questions of fact only to test the reasonableness of the conclusions reached." *Frank v. Assessors of Skowhegan,* 329 A.2d 167, 170 (Me.1974). As we explained in *Skowhegan,* the scope of judicial review is not broadened by the absence of a record of the proceedings before the Assessor, nor is it broadened by the preparation of a substituted record in the Superior Court:

> Many of [the assessors'] decisions must of necessity be made without a formal hearing of which a complete record is made to indicate the factual basis for the judgment.
>
> An appeal from a decision of tax assessors therefore, requires the Court to make its own independent inquiry into all relevant and material facts bearing on the ultimate issue of the fairness and rationality of the assessment.
>
> In the absence of a record, the Court can properly act on the assumption that such evidence as it adduces on review was, in fact, the basis upon which the assessors reached their conclusions ... or even if it appears such evidence was not before the assessors, if the evidence before the Court does not compel the conclusion that the assessors' judgment was irrational, their judgment should not be disturbed.

*Id.* (citations omitted). *See also Lovely v. Zoning Board of Appeals of City of Presque Isle,* 259 A.2d 666, 668 (Me.1969) (*de novo* proceeding in the Superior Court is still in the nature of appellate review; proper test on appeal is whether zoning board's decision was unlawful, arbitrary, capricious or unreasonable).

The Superior Court erred as a matter of law when it substituted its judgment for that of the State Tax Assessor. We examine the record developed before the Superi-

or Court, in accordance with the recognized limits of judicial review, to determine if the State Tax Assessor, applying the relevant law, could have rationally concluded [2] that Jackson failed to prove that the transactions were not taxable sales of tangible personal property.[3]

## II.

The State of Maine imposes sales tax at the rate of 5% on retail sales of tangible personal property. 36 M.R.S.A. § 1811 (1978).[4] The tax base is the sale price and includes the cost of labor and services that are a part of the sale. 36 M.R.S.A. § 1752(14) (1978).[5] As a general rule, sales of services alone are not taxed.[6] The statute provides little explicit guidance as to the tax treatment of the mixture of services and property that constitutes the work product of advertising agencies such as Jackson. *Cf.* 36 M.R.S.A. § 1752(17–A) (Supp.1987) (defining taxable services). The State Tax Assessor, however, has declared such transactions taxable since at least 1964. Bulletin Number 38 states that advertising agencies are sellers of tangible personal property and that the tax "applies to the *entire* amount charged to clients for items of tangible personal property such as

drawings, paintings, designs, photographs, lettering, assemblies, and printed matter." (emphasis supplied).[7] Jackson's work clearly results in products that can be "seen ... touched ... [and] perceived by the senses"—the video of Gifford's television commercial, the Eastland Shoe layout and the Northland brochure. The question is whether Jackson has proved that the sale of those items of tangible personal property are merely incidental to a nontaxable sale of services.

In two prior cases we have reviewed the Assessor's determination that similar transactions involved the sale of tangible personal property rather than services. Contrary to the contentions of the parties and the assumption of the Superior Court, however, we have not identified any discrete legal criteria for distinguishing a sale of services from a sale of personal property.

*Community Telecasting Service v. Johnson,* 220 A.2d 500 (Me.1966) was reported directly to this Court on a statement of facts and deposition submitted in lieu of a substituted record in the Superior Court. The case involved advertising art work and slides indistinguishable from the videotapes

---

**2.** 5 M.R.S.A. § 11007(4)(C) (1979) states in pertinent part this Court may:

C. Reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:

(4) Unsupported by substantial evidence on the whole record; or
(5) Arbitrary or capricious or characterized by abuse of discretion.

**3.** 36 M.R.S.A. § 1763 (1978) states:

The burden of proving that a transaction was not taxable shall be upon the person charged with tax liability.

**4.** 36 M.R.S.A. § 1752(17) (1978) provides as follows:

"Tangible personal property" means personal property which may be seen, weighed, measured, felt, touched or in any other manner perceived by the senses, but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership.

**5.** Section 1752(14) provided, in relevant part:

"Sale price" means the total amount of the sale ... of a retail sale, including any services that are a part of such sale ... without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost ... or any other expenses whatsoever.

Section 1752(14) was repealed and replaced by P.L.1987, ch. 497, § 24. *See* 36 M.R.S.A. § 1752(14)(A) (Supp.1987).

**6.** 36 M.R.S.A. § 1752(17–A) (Supp.1987) provides specific exceptions to the general rule for rental of living quarters; rental of automobiles (for less than one year); telephone or telegraph service; extended cable television service; fabrication services; and custom computer programming.

**7.** The State Tax Assessor does make an exception for so-called preliminary art—roughs, visualizations, comprehensives or layouts prepared for clients before a contract is entered or before approval is given for finished art—provided that a separate charge is made and that the preliminary art does not become physically incorporated into the finished art. No contention is made in this case, however, that any of the items qualify as preliminary art.

involved in the present case. In discussing the Assessor's decision that the sale was one of tangible personal property we simply noted that under case law elsewhere "certain factual features assume importance." *Id.* at 503. We identified certain features relied on by other courts as follows:

It has been held that where the creation of property to be transferred requires high skill and the materials involved are of relatively little value and the principal value of the finished product lies in the services to be rendered, and the product is of little value to anyone other than the buyer, the transaction may be deemed a sale of service rather than goods. The relative dollar value of the service as against that of the product, sometimes expressed in percentages, has been held significant. *J.A. Burgess Co. et al. v. Ames* (1935) 359 Ill. 427, 194 N.E. 565 (blue printing, photography); *Mahon v. Nudelman* (1941) 377 Ill. 331, 36 N.E.2d 550 (fur repair); *Berry–Kofron Dental Laboratory Co. v. Smith* (1940) 345 Mo. 922, 137 S.W.2d 452 (dentures, etc., for dentists); and *Washington Printing & Binding Co. v. State* (1937) 192 Wash. 448, 73 P.2d 1326 (printing, materials 14% of total charge) all non-taxable.

*Id.* We made the further observation, however, that:

The fact that property the subject of a sale is custom made and that labor is the principal cost factor does not establish the contract as one for rendition of services rather than sale. *Bigsby v. Johnson* (Cal.1940) 99 P.2d 268 (printer's mats and composition); *Voss v. Gray* (1941) 70 N.D. 727, 298 N.W. 1 (photographs); and *Warshawsky & Co. v. Department of Finance* (1941) 377 Ill. 165, 36 N.E.2d 233 (sale of rebuilt motors); all taxable.

*Id.* at 503. Ultimately, we concluded that "[t]he facts of the present case do not yield the criteria discussed above and the transaction is not established as a 'service' transaction." *Id.* Effectively this Court held only that the taxpayer had failed to demonstrate the irrationality of the Assessor's decision. It is readily apparent that this Court did not adopt the list of "factual features" as a comprehensive statement of the legal criteria for distinguishing between sales of services and personal property. Indeed, the result in *Community Telecasting* confounds any attempt to apply such criteria. Accordingly, Jackson takes nothing from its claim that the Assessor's decision contravenes certain of the criteria set forth in *Community Telecasting.*

Finally, the Superior Court predicated a claim of legal error on a claimed inconsistency between the Assessor's decision in this case and our opinion in *Measurex Systems, Inc. v. State Tax Assessor,* 490 A.2d 1192 (Me.1985). The Superior Court drew an analogy between the advertising products in this case and the custom computer systems involved in *Measurex.* It is important to note, that this Court did not hold in *Measurex* that the sale of custom software constituted a sale of services, either as a matter of law or as a matter of fact. The determination concerning the taxability of sales of custom software in that case was made by the Superior Court at an intermediate stage in the appeal and that ruling was not the subject of a cross-appeal by the Assessor. The only issue before this Court in *Measurex* was the taxable status of the canned software. Any discussion in our opinion concerning custom software served only to illustrate the continuing rationality of the Assessor's tax treatment of canned software in the face of the treatment mandated for the custom software by the unchallenged order of the Superior Court. Thus, our holding in *Measurex* is confined to the conclusion that the taxpayer "failed to meet its burden of proving that the transactions [concerning canned software] were not taxable. *Id.* at 1193.

 Finding no legal error, and concluding that Jackson has failed to demonstrate that the decision of the Assessor is irrational, arbitrary, capricious or characterized by an abuse of discretion, we must uphold the decision of the Assessor. On this record we cannot state that the Assessor was compelled to find the principal value of the advertising products related to a sale of

services. *See Community Telecasting Service v. Johnson,* 220 A.2d at 503.

The entry is:

Judgment of the Superior Court vacated. Remanded with instructions to affirm the decision of the State Tax Assessor.

McKUSICK, C.J., and CLIFFORD and HORNBY, JJ., concurring.

GLASSMAN, Justice, dissenting.

I must respectfully dissent. The court cloaks its opinion in a deferential standard of review which is inappropriate for this appeal. Judicial review of an administrative decision is confined to a *"complete review of questions of law* and to limited review of questions of fact." *See Frank v. Assessors of Skowhegan,* 329 A.2d 167, 170 (Me.1974) (emphasis added); 5 M.R.S.A. § 11007(4)(C)(4) (1979) (court may reverse administrative decision if affected by error of law). An evaluation of the rationality of the tax assessor's determination is appropriate when the issue raised on appeal is the valuation of a taxable item, but we do not examine questions of law under such a deferential standard of review. *See Frank,* 329 A.2d at 170.

Here, the facts as disclosed in the de novo hearing before the Superior Court are undisputed. The question of law presented on this appeal is whether the State Tax Assessor erred in interpreting the sales tax provisions to apply to the individually unique end products that result from the professional and creative advertising services performed by Jackson Advertising. The Bureau of Taxation, in Bulletin Number 38, states that advertising agents are sellers of tangible personal property and that the tax "applies to the entire amount charged to clients for items of tangible personal property such as drawings, paintings, designs, photographs, lettering, assemblies and printed matters." Me. Bureau Tax'n, Sales and Use Taxation Instruction Bulletin No. 38 at 22 (July 1, 1964). The Tax Assessor applied the interpretation of the sales tax provisions, as embodied in Bulletin Number 38, in imposing the present assessment. We cannot transmute this question of law into one of fact and hide behind a deferential standard of review. Rather, as presented to us by the parties on appeal, we must review the Tax Assessor's decision for any error of law. *See Camp Walden v. Johnson,* 156 Me. 160, 166–67, 163 A.2d 356, 358–59 (1960) (court construed sales tax provisions to determine that State Tax Assessor erred in interpreting term "tourist camp" to include boys' and girls' camp).

Under the sales tax statutory scheme, the State of Maine imposes a sales tax at the rate of 5% on the retail sales of tangible personal property. 36 M.R.S.A. § 1811 (1978). Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt, touched or in any other manner perceived by the senses, but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidence of indebtedness or ownership." *Id.* § 1752(17). The tax base of tangible personal property is the sale price and includes the cost of labor and services that are a part of the sale. *Id.* § 1752(14). As a general rule, sales of services are not taxed. The statute sets forth narrowly defined services that are taxable as exceptions to the general nontaxability status. *Id.* § 1752(17–A) (Supp.1988).

The Legislature has provided no explicit guidance as to the tax treatment of the work product of full service advertising agencies such as Jackson Advertising. Jackson Advertising's work results in end products that can be "seen ... [and] touched"—the video of Gifford's television commercial, the Eastland Shoe layout, and the Northland brochure. The question remains, however, whether the Legislature intended to tax end products of minimal value that are merely conduits through which Jackson Advertising provides its clients with the services the agency is retained to provide.

We have twice addressed the issue of whether, under 36 M.R.S.A. § 1752(17) (1978), a sale is one of services or one of tangible personal property. In *Community Telecasting Service v. Johnson,* 220

A.2d 500 (Me.1966),[1] we enunciated criteria for distinguishing a sale of services from a sale of personal property.

> [W]here the creation of property to be transferred requires high skill and the materials involved are of relatively little value and the principal value of the finished product lies in the services to be rendered, and the product is of little value to anyone other than the buyer, the transaction may be deemed a sale of service rather than goods. The relative dollar value of the service as against that of the product, sometimes expressed in percentages, has been held significant.

*Id.* at 503. Without applying these factors in determining whether art work and slides created by the television broadcasting company for the purpose of advertising its customers' businesses were tangible personal property, we merely declared *ipse dixit* that the advertising materials were tangible personal property and therefore subject to the sales tax provisions. *Id.*

I agree with the court's conclusion that the result in *Community Telecasting* confounds any attempt to apply the criteria. I do not however join the court in its attempt to recharacterize the criteria adopted by *Community Telecasting* as mere dictum. Although in *Community Telecasting* we did not apply the criteria to the art work and slides, we expressly applied them in our determination that pamphlets containing results of market surveys sold to the television station were not tangible personal property and therefore not subject to a use tax in contravention to the State Tax Assessor's determination. *Id.* at 505–506. In the later case of *Measurex Systems, Inc. v. State Tax Assessor*, 490 A.2d 1192, 1195–96 (Me.1985), we quoted with approval the standards stated in *Community Telecasting* as "criteria to be used in determining whether a sale is one of services or tangible personal property." Rather than circumvent the criteria adopted by this court, I would conclude that *Community Telecasting's* holding, *ipse dixit*, that art work and slides are tangible personal property, is of no precedential value.

Further, I would conclude that, based on the undisputed testimony and exhibits introduced at the hearing, Jackson Advertising sustained its burden of proving that the advertisements produced for its clients fall within the *Community Telecasting* definition of a sale of services. The materials involved in the production of the Gifford's television commercial, the Eastland Shoe layout, and the Northland brochures are of relatively little value. The principal value to the customers was in the professional services provided by Jackson Advertising, creative services comprised of technical expertise and aesthetic judgment. The end products were tailored to individualized, unique specifications, were of minimal intrinsic value, and of no value to anyone but the particular client.

If the court disclaims the applicability of the criteria set forth in *Community Telecasting* and restated in *Measurex Systems*, ascertainment of the legislative intent must be derived solely from the language of the statute. The statutory scheme imposes a tax on the sale price of tangible personal property and includes therein the service and labor that are incidental to the creation of tangible personal property. 36 M.R.S.A. § 1752(14) (1978). In determining the meaning of "tangible personal property," we must consider the provisions of sections 1752(14) and 1752(17). *See Faucher v. City of Auburn*, 465 A.2d 1120, 1124 (Me. 1983) ("It is a fundamental rule of statutory construction that in order to determine the legislative intent in relation to a particular section of a comprehensive statute, courts should consider the statutory scheme in its entirety."); *Freeport Minerals Co. v. Town of Bucksport*, 437 A.2d 642, 644 (Me.1981). The inclusion of labor and services in the sales price of tangible personal property in section 1752(14) does not manifest a legislative intent to expand the definition of tangible personal property, *see* 36 M.R.S.A. § 1752(17), to encompass the realm of professional services that use a tangible item of minimal intrinsic value as a conduit for the delivery of such services.

---

**1.** It should be noted that this decision predated the enactment of 36 M.R.S.A. § 1752(17–A).

A fundamental rule of statutory construction is that "[s]tatutes imposing taxes are construed most strongly against the government and in the citizen's favor and may not be extended by implication beyond the clear import of the language used." *Camp Walden v. Johnson,* 156 Me. at 165, 163 A.2d at 358. *See also Blaney v. Town of Shapleigh,* 455 A.2d 1381, 1386 (Me. 1983) ("When a statute imposing or enforcing a tax or other burden on the citizen is susceptible of more than one interpretation, the court will interpret the statute in a light most favorable to the citizen."); *McCarty v. Greenlawn Cemetery Ass'n,* 158 Me. 388, 392–93, 185 A.2d 127, 129 (1962); *Millett v. Mullen,* 95 Me. 400, 415, 49 A. 871, 873 (1901). A fair construction of the sales tax provisions leads to the conclusion that the Legislature did not intend to impose a sales tax on the end products of the professional advertising services provided by Jackson Advertising. Although the Legislature may enact statutes imposing a sales tax on service industries, except for those taxable services enunciated in 36 M.R.S.A. § 1752(17–A) (Supp.1988), the present statutory scheme does not demonstrate such an intention. Accordingly, I would affirm the Superior Court's judgment vacating the Tax Assessor's determination either pursuant to the criteria in *Community Telecasting* or the established principles of statutory interpretation.