**Paul CUMMINGS and Doris Cummings**

**v.**

**TOWN OF OAKLAND.**

Supreme Judicial Court of Maine.

Argued Sept. 17, 1980.

Decided June 10, 1981.

Martha E. Geores (orally), Pine Tree Legal Assistance, Inc., Augusta, for plaintiff.

Daviau, Jabar & Batten, John P. Jabar, Waterville, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.

---

* Glassman, J., concurred in this decision prior to his *death.*

CARTER, Justice.

The plaintiffs, Paul and Doris Cummings, live in Oakland. Prior to October 25, 1979, the plaintiffs owned their home, Mrs. Cummings having title to the land on which the home was situated and Mr. Cummings having title to the residence building. The plaintiffs did not pay their 1977 property taxes which totaled One Hundred Eight Dollars ($108.00). On April 10, 1978, the defendant, Town of Oakland, sent by certified mail the notice required by 36 M.R.S.A. § 942,[1] return receipt requested, to each plaintiff stating that a lien on the property was claimed for unpaid taxes. These notices were received and signed for by the plaintiffs on April 11, 1978. On April 24, 1978, the defendant filed a tax lien on each plaintiff's property in the Kennebec County Registry of Deeds, thereby creating tax lien mortgages on the property and commencing the running of the plaintiffs' 18-month redemption period pursuant to 36 M.R.S.A. § 943. The filing of the lien constituted by the specific terminology of § 943 notice "of the existence of the tax lien mortgage."[2]

On September 20, 1979, the defendant sent the additional notice required by the fifth paragraph of § 943,[3] also by certified mail, return receipt requested, to each plaintiff, using the same address as the defendant had used on April 10, 1978, on Doris Cummings' letter. The notice to each plaintiff stated that a tax lien had been filed on April 25, 1978, on the addressee's property, and that on October 25, 1979, the resulting tax lien mortgage would be deemed to have been foreclosed and the right of redemption to have expired if the tax was left unpaid. These two letters were returned to the defendant marked "unclaimed." The postal markings on the return envelopes indicate that the postal service gave "first notice" on September 21, 1979, "second notice" on September 26, 1979, and returned the letters on October 5, 1979. The defendant made no further attempt to notify the plaintiffs of the impending automatic foreclosure.

On November 16, 1979, the plaintiffs learned from reading a newspaper article that the defendant, considering the plaintiffs' home to have been tax-acquired by the defendant, had decided to sell the home. Paul Cummings then offered to pay the amount secured by the 1977 tax liens, but the defendant refused to accept payment. Thereupon, the plaintiffs brought this action seeking an injunction to prevent the sale of their home and to compel the defendant to accept payment of their 1977 property tax plus interest and costs.

The plaintiffs claim that the foregoing procedures were insufficient under the statute to accomplish an expiration of the statutory right of redemption and to thereby

1. In 1978, 36 M.R.S.A. § 942, provided in pertinent part:

 The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax, give to the person against whom said tax is assessed, or leave at his last and usual place of abode, or send by certified mail, return receipt requested, to his last known address, a notice in writing signed by said tax collector or bearing his facsimile signature, stating the amount of such tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on said real estate to secure the payment of the tax, and demanding the payment of said tax within 10 days after service or mailing of such notice . . . .

2. 36 M.R.S.A. § 943 provides in pertinent part:
 The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality in which the real estate is situated having prior-

ity over all other mortgages, liens, attachments and encumbrances of any nature, and shall give to said municipality all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.

 The filing of the tax lien certificate in the registry of deeds shall be sufficient notice of the existence of the tax lien mortgage.

 . . . . .

 If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.

3. This is the so-called notice of "impending automatic foreclosure."

vest full title in the municipality. This claim is based on two contentions: (1) that § 943 requires that the property owner be given "actual notice" of the "impending automatic foreclosure," and (2) that the notice given under § 943 of "impending automatic foreclosure" did not meet due process standards because, when the defendants received knowledge that the first notice did not reach the plaintiffs, the defendant did not further attempt to communicate the notice by "a writing left at . . . [their] last and usual place of abode."

## I.

The tax lien statute was first enacted by Public Laws, 1933, Chap. 244. It was intended to provide a method, in addition to those already in existence,[4] "for the enforcement of liens on real estate" created by the assessment of taxes under other pertinent provisions of statutory law. *Town of Warren v. Norwood*, 138 Me. 180, 182, 24 A.2d 229, 231 (1941). It has since undergone a series of amendments aimed at expanding its scope and simplifying its applicability.

Before 1973, the statute provided by § 942 for the giving of notice to the property owner of the claim of a lien for unpaid taxes. This section provided, in general, for notice by certified mail alleging that a lien is claimed on described property for payment of the tax specified therein and demanding payment of the tax. 36 M.R.S.A. § 942. This notice must be served or mailed at least 10 days before the tax lien certificate is filed in the Registry of Deeds. Filing of the certificate "shall be sufficient notice of the existence of the tax lien mortgage." 36 M.R.S.A. § 943.

Until the 1973 amendment, no further notice to the property owner was required by the statute in order to lay the foundation to achieve a forfeiture of the realty if the taxes were not paid within 18 months of the recording of the tax lien certificate. This court has upheld the sufficiency of that notice provision as against attacks by resident property owners in the face of attacks

based on due process of law. *Norwood*, 138 Me. at 197–201, 24 A.2d at 237–39; *City of Auburn v. Mandarelli*, Me., 320 A.2d 22, 30 (1974). On the other hand, we have invalidated, for failure to meet due process requirements, the enforcement of the Act to accomplish a forfeiture of a non-resident property owner's interest in realty at a time when the Act failed to provide for the giving of notice to a non-resident of the claim of a tax lien on his property and no such notice was, in fact, given. *Kramer v. Inhabitants of Linneus*, 144 Me. 239, 67 A.2d 536 (1949).

Here it is agreed that the notice required by § 942 was sent to the plaintiffs, and was received. The plaintiffs do not challenge the sufficiency of the § 942 notice. It is likewise established that the tax lien certificate was filed in the Registry of Deeds in accordance with § 943.

The plaintiffs' challenge relates to the notice required under the fifth paragraph of § 943. This portion of the statute came into being by the 1973 amendment. It originally provided:

> The municipal treasurer shall notify the party named on said tax lien mortgage not more than 45 days nor less than 30 days previous to the foreclosing date of the said tax lien mortgage, in writing by registered or certified mail, of the impending automatic foreclosure, indicating within the notice the exact date of foreclosure. In the event the notice provided in this section has not been given, the party named on said tax lien mortgage shall have the right to redeem said real estate mortgage within 30 days after the said notice.

P.L.1973, c. 368.

The first sentence of this provision was further amended in 1975 to read as follows:

> The municipal treasurer shall notify the party named on said tax lien mortgage not more than 45 days nor less than 30 days previous to the foreclosing date of the said tax lien mortgage, in a writing left at his last and usual place of abode or

4. *See, e. g.,* R.S.1930 c. 14 §§ 28, 95.

sent by registered or certified mail, to his last known address of the impending automatic foreclosure indicating within the notice the exact date of foreclosure.

P.L.1975, c. 770, § 205.

The plaintiffs' first contention is that the language of this paragraph as it stood after the 1975 amendment requires that the property owner receive "actual notice" of the impending automatic foreclosure; that is, that the property owner retains the right to the additional 30 day period of redemption until *receipt* of notice of the impending foreclosure. We do not so construe the statutory language.

■ A statute is to be construed to give effect to the intent of the legislature in enacting it. *Mundy v. Simmons*, Me., 424 A.2d 135, 137 (1980); *Town of Arundel v. Swain*, Me., 374 A.2d 317, 319 (1977). A proper construction of the statutory language can be found only in the light of legislative purpose as represented by the total statutory scheme for creation and enforcement of tax lien mortgages. *See In re Belgrade Shores, Inc.*, Me., 359 A.2d 59, 61 (1976). Legislative intent can be gathered from the language of the provision in question. Here the operative language is that "[t]he municipal treasurer *shall notify* the party named ... in a writng *left at his last and usual place of abode or sent by registered or certified mail, to his last known address....*" (emphasis added).

■ The words "shall notify" taken by themselves, may in some contexts import a requirement of actual notice or receipt of notice by the person to whom notice is to be given. Such import is negatived, however, where other language specifies the manner in which the notice is to be *given*. In such context, the clear intent of the language is that utilization of the notice mechanism provided for in the statute satisfies the statutory requirement of the *giving* of notice. In short, if the municipality *sends* the

notice by one of the methods prescribed by the statute, it has *given* notice within the contemplation of the statute.

This construction is supported by the fact that the statutory language at no point refers to receipt of the notice by the property owner or to acquisition of "actual knowledge" by the property owner. In fact, the second sentence of the provision in question, which creates the additional thirty day period of redemption, does not speak in terms of the *receipt* of the notice provided for in the first sentence. Rather, it states that "[i]n the event the notice provided in this section has not *been given*, the party ... shall have the right to redeem ... within 30 days after the said notice." (emphasis added). It would have been a simple matter to make it positively clear that actual notice was required, if that were the legislative intent, by using the word "received" in place of "given" in this sentence. The technique of providing for the giving of notice by one of two alternative methods coupled with an enlarged period of redemption which comes into existence only in the event the notice is not *given* shows a clear legislative intent to require the use of the methods prescribed by the statute to give the notice. It does not show an intent that more be required than the sending of the notice in order to permit final foreclosure of the lien and the consequent ripening of title in the municipality.

The provisions of the sixth paragraph of § 943 demonstrate that the legislature knows how to draft a statute so as to require the actual communication of the content of a notice in the tax mortgage lien certificate situation. That provision ties the running of the three-month period of redemption available to a mortgagee of record who does not receive the notice required by the fourth paragraph of § 942, to such mortgagee's acquisition of "actual knowledge" of the recording of the tax lien certificate.[5] So clear a differentiation of the

5. The sixth paragraph of 36 M.R.S.A. § 943 states:

> After the expiration of the 18-month period of redemption, the mortgagee of record of

said real estate or his assignee and the owner of record if the said real estate has not been assessed to him or the person claiming under him shall, in the event the notice provided for

standard of notice from the requirement of knowledge *occurring within the same statute* compels the conclusion that where the legislature speaks in terms *only* of the giving of notice, it did not intend to require actual receipt of the notice or actual communication of its contents as a precondition of the expiration of the period of redemption.

This construction of the language of the statute is supported by the legislative history of P.L.1973, c. 368 and of P.L.1975, c. 770 § 205, which enacted the fifth paragraph of § 943 in its present form. The original bill introduced into the 106th Legislature (L.D. 722) read as follows:

AN ACT Relating to Nature of Foreclosure of Tax Lien Mortgages.

Be it enacted by the People of the State of Maine, as follows:

R.S., T.36, § 943, amended. Section 943, of Title 36 of the Revised Statutes is amended by adding after the 4th paragraph a new paragraph to read as follows:

The municipal treasurer shall notify the party named on said tax lien mortgage not more than 45 days nor less than 30 days previous to the foreclosing date of the said tax lien mortgage, in writing, of the impending automatic foreclosure, indicating within the notice the exact date of foreclosure.

In the legislative debate on this bill, Senator Fortier raised the problem that in its then form the provision could create another opportunity for beclouding tax titles to the detriment of the municipality if the notice were not given. He said:

However, there is a technical problem in the way the original bill was written in that it would be possible, if the municipal treasurer neglected, inadvertently or oth-

erwise, to send this notice, that the municipality could lose its equity in the lien. I do not think there is anywhere in the tax lien law provisions whereby a town official could jeopardize the equity of a municipality. This would simply require that, in case such a notice was *not properly sent*, the taxpayer would have another 30-day notice from the time that he was properly notified,[6] so it would not jeopardize the equity of the municipality.

2 Me.Leg.Rec. 2464 (1973) (emphasis added). In short, he did not want failure to *give* the notice of impending foreclosure to be a legal basis to prevent the ripening of title in the municipality by the completion of the foreclosure. The avoidance of this result was accomplished by the addition of the second sentence to the amendment: "In the event the notice provided in this section has not *been given*, the party named on said tax lien mortgage shall have the right to redeem said real estate mortgage within 30 days after the said notice." (emphasis added). The clear purpose of the Act was to require the giving of the notice. It was not intended, in any event, that the rights of the municipality under the lien should be cut off. The Senator made it clear that the property owner was to have the benefit of an additional thirty day period for redemption "in case such a notice *was not properly sent*." 2 Me.Leg.Rec., *supra*. (emphasis added).

Thus, we find that the legislative intent was to provide that notice of impending foreclosure be given in the period between 45 to 30 days prior to the end of the 18-month foreclosure period. The Legislature intended to require, if the municipal officials failed to give the notice in a timely fashion, that they do so to perfect the mu-

said mortgagee and said owner has not been given as provided in section 942, have the right to redeem the said real estate within 3 months after receiving actual knowledge of the recording of the tax lien certificate by payment or tender of the amount of the tax lien mortgage, together with interest and costs, and the tax lien mortgage shall then be discharged by the owner thereof in the manner provided.

A similar standard of notice is provided for in 36 M.R.S.A. § 1076 requiring the purchaser at sale to give notice after purchase at the tax collector's sale to the holder of an undischarged mortgage of record.

6. In the full context of these remarks, we believe that "he was properly notified" should be read as "a notice was properly sent."

nicipality's acquisition of title. To that end, the property owner was afforded a thirty day period of redemption *from the time that the municipal officials in fact sent the notice by one of the methods specifically provided for in the statutory language.*

## II.

We next address the plaintiffs' claim of an unconstitutional application of the statute in this case. We do not understand the plaintiffs to make a facial attack upon the constitutional propriety of the statute as it stood after the 1975 amendment.[7] Rather, the contention is that the town violated the plaintiffs' due process rights by failing to attempt personal service of the § 943 notice after learning that the plaintiffs had not received the notice sent by certified mail. Because the town did not attempt to give the notice by the alternative statutory method of personal service, plaintiffs contend it violated the principles enunciated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Covey v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) and *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). The fundamental principle underlying the holdings in these cases is one of fairness: where an initial notice intended to affect constitutional rights is required, it cannot be given by methods or under circumstances which the giver of notice could reasonably anticipate will be ineffective in communicating knowledge to the person or entity entitled to receive the notice. The principle is articulated in *Mullane* in this language:

> The notice must be of such nature as reasonably to convey the required information, . . . . . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

339 U.S. at 314–15, 70 S.Ct. at 657. In *Mullane,* the Court said that this principle

was violated because the bank in settling a trust gave the required notice by publication when it had access to a list of names and addresses of those whose rights were directly affected by the content of the notice. In *Covey,* the Court again found a violation of the constitutional standard where a notice of tax foreclosure was sent and received by a property owner known to be incompetent by the town officials responsible for giving the notice. In *Robinson,* the violation occurred because the notice of State foreclosure on personal property was given by certified mail to an owner's address as listed in the records of the Secretary of State (as prescribed by statute), but at a time when the State officials knew that the property owner was not at that address because he was in the custody of the State as a prison inmate.

However, those cases, and the factual foundations present in each for the application of the principle of "fundamental fairness" as a constituent element of due process of law, are all to be distinguished from the case at bar. First of all, in each of them, the notice in question was the *initial* notice of the forthcoming diminishment of a property interest by governmental action. The property owners in those cases had not had any prior notice of such governmental action and would not receive any notice other than the one then in controversy. Thus, failing the receipt of that notice, the property owner would not be given any notice of the forthcoming action.

Such is not the fact in this case. It is undisputed that the town gave to the plaintiffs and that they received the § 942 notice stating that a lien was claimed on the premises for the 1977 property taxes of One Hundred Eight Dollars ($108.00). These notices fully complied with due process notice requirements with respect to the claim of the lien and the possibility of a forfeiture of the subject property by its foreclosure. *Town of Warren v. Norwood,* 138 Me. 180, 24 A.2d 229 (1941); *City of*

7. The plaintiffs' Complaint alleged that without giving prior notice the town instituted a new policy on tax lien foreclosures in violation of the plaintiffs' due process rights. This issue was neither perfected at trial, nor raised on appeal.

*Auburn v. Mandarelli*, Me., 320 A.2d 22 (1974). Upon receipt of these notices, the plaintiffs were legally on notice of the town's claim of a lien against the premises and of the potential loss of their title to the premises through forfeiture if the taxes were not paid within the ensuing 18 months. The effect of that notice was to place the burden upon the plaintiffs to pay the taxes within 18 months in order to avoid the forfeiture.

The due process notice requirement imposed by *Mullane, Covey*, and *Robinson* is a threshold constitutional requirement to assure that the government does not appropriate private property interests without first taking reasonable steps to assure that the property owner is aware of both the danger of the loss of his interest and of the opportunity to avoid the forfeiture by performance of the acts necessary to that end. Once that threshold requirement has been met, the opportunity to avoid the forfeiture is available to the property owner and the burden reposes fully on him to do so by appropriate action. He is not entitled to receive, and the town is not obliged to give, any further notice of the impending danger to his interest in the property. The provision of that opportunity meets fully the constitutional requirement.

 Where the state gratuitously provides by statute for an additional warning by notice of "impending automatic foreclosure" as was done here, that second notice is not itself of constitutional magnitude so long as it is given in a nondiscriminatory manner to all persons similarly situated.[8] The threshold requirement of notice has previously been met, and the property owners here have had for many months both actual notice of the lien and the continuing opportunity to act to avoid the impending foreclosure. The giving of the § 943 notice is not necessary to meet the threshold requirement and is not intended to do so. Not being a notice necessary to the protection of constitutional rights it need not comply with the strictures imposed upon notices that have direct impact upon constitutional rights.

Plaintiffs here point out that the the statute provided for two methods of giving the § 943 notice to the property owner, one of which, certified mail, the town utilized. They argue that a violation of the *Mullane* concept of notice occurred because as a result of the certified mail notice the town became aware that the notice had not, in fact, been received, but took no further action to accomplish the giving of the notice by the alternate statutory method of personal service.[9]

This argument must fail for it is based upon the erroneous assumption that the notice is of constitutional magnitude. Since the § 943 notice is not necessary in this statutory scheme to meet the threshold notice requirements of due process, it need only be given as allowed by statute on a basis that is not arbitrarily discriminatory against individual property owners or classes of property owners. Hence, the town was allowed, so far as *constitutional* requirements are concerned, to choose either method prescribed by the statute for the giving of the § 943 notice to the plaintiffs. It appears from the record made in this case that that choice and the execution of the giving of the notice by the chosen method were not intended to and did not, in fact, work any invidious discrimination against plaintiffs or their property interests. That being so, there was no constitutional defect in the notice here given by the town.

The entry is:

Judgment affirmed.

All concurring.

---

8. No argument is here advanced that the town violated any aspect of equal protection of the laws by the manner or circumstances under which it gave the § 943 notice of "impending automatic foreclosure." Nor is there any evidence in the record indicating such a violation.

9. No assertion is made that the town deliberately chose one of the statutory methods of notice knowing that it was less likely to result in the communication of the notice to the plaintiffs than was the other available method. There is no evidence in the record before us to support such an assertion.