Parker N. BLANEY, et al.

v.

**INHABITANTS OF TOWN OF SHAPLEIGH, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1983.

Decided Feb. 1, 1983.

Ahlgren & Perrault, John Perrault (orally), Portsmouth, N.H., for plaintiff.

Gary C. Wood, Maine Municipal Ass'n, Augusta, amicus curiae.

R. John Wuesthoff (orally), Portland, for Inhabitants of Town of Shapleigh.

Nicholas C. Scaccia, Sanford, for William S. Small.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The Town of Shapleigh appeals the grant of a summary judgment in favor of Parker and Evelyn Blaney entered in the Superior Court, York County. The Blaneys brought an action against the Town of Shapleigh to

establish that the town had improperly claimed tax foreclosure and title to their property. Pursuant to M.R.Civ.P. 54(b), the court entered final judgment in favor of the plaintiffs against the Town of Shapleigh. We affirm the result reached by the Superior Court.

On March 11, 1957, Parker Blaney purchased the subject real estate. According to the deed, the property was located in Acton, Maine. On April 10, 1959, Parker transferred the real estate by deed to himself and to Evelyn Blaney, who was then Parker's wife, as joint tenants. The deed was recorded on September 2, 1969. The Blaneys transferred the property by mortgage deed to the Maine National Bank which was recorded on September 9, 1969.

During the late 1950's, Parker paid taxes to the Town of Acton. In the early 1960's, he began paying taxes to the Town of Shapleigh. The Town of Acton ceased billing Parker for taxes. It was explained at oral argument that Acton entirely taxed the land because the deeds stated that the land was located in Acton. During the 1960's both towns apparently became satisfied that the metes and bounds description established that the land was, in fact, located in Shapleigh.[1] On November 8, 1978, the Town of Shapleigh sought to collect 1978 real property taxes from Parker Blaney. On approximately July 19, 1979, Parker paid the town $154.00 for the 1978 taxes. On October 18, 1979, as required by 36 M.R.S.A. § 942 (1978),[2] the town sent a

---

1. See infra note 6.

2. Section 942 provides:

 Liens on real estate created by section 552, in addition to other methods established by law, may be enforced in the following manner.

 The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax, give to the person against whom said tax is assessed, or leave at his last and usual place of abode, or send by certified mail, return receipt requested, to his last known address, a notice in writing signed by said tax collector or bearing his facsimile signature, stating the amount of such tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on said real estate to secure the payment of the tax, and demanding the payment of said tax within 10 days after service or mailing of such notice with $1 for said tax collector for making the demand together with the certified mail, return receipt requested, fee. In the case of taxes supplementally assessed, said tax collector may give such notice after the expiration of 8 months and within one year after the date of commitment of such supplementally assessed taxes. If an owner or occupant of real estate to whom said real estate is taxed shall die before such demand is made on him, such demand may be made upon the executor or administrator of his estate or upon any of his heirs or devisees.

 After the expiration of said 10 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county or registry district where said real estate is situated a tax lien certificate signed by said tax collector or bearing his facsimile signature, setting forth the amount of such tax, a description of the real estate on which the tax is assessed and an allegation that a lien is claimed on said real estate to secure the payment of said tax, that a demand for payment of said tax has been made in accordance with this section, and that said tax remain unpaid. When the undivided real estate of a deceased person has been assessed to his heirs or devisees without designating any of them by name it will be sufficient to record in said registry a tax lien certificate in the name of the heirs or the devisees of said decedent without designating them by name.

 At the time of the recording of the tax lien certificate in the registry of deeds, in all cases the tax collector shall file with the municipal treasurer a true copy of the tax lien certificate and shall send by certified mail, return receipt requested, to each record holder of a mortgage on said real estate, to his last known address, a true copy of the tax lien certificate. If the real estate has not been assessed to its record owner, the tax collector shall send by certified mail, return receipt requested, a true copy of the tax lien certificate to the record owner.

 The costs to be paid by the taxpayer shall be the sum of the fees for recording and discharge of the lien as established by Title 33, section 751, subsection 10, plus $2 and all certified mail, return receipt requested, fees. Upon redemption, the municipality shall prepare and record a discharge of the tax lien mortgage.

 The municipality shall pay the tax collector $1 for the notice, $1 for filing the tax lien certificate and the amount paid for certified mail, return receipt requested, fees. The fees for recording the tax lien certificate and for

ten-day notice of tax lien by certified mail, return receipt requested, to Parker Blaney, 98914 Kaonohi Place, Aiea, Hawaii 96701. The notice indicated that Parker owed outstanding taxes for the 1978 tax year in the amount of $7.33, together with interest and costs of $20.38.

The Blaneys had separated in October of 1979. Consequently, although Evelyn was living at the address to which the notice was sent, Parker at that time was living in Honolulu. Parker had not given the town any notice of his change of address. Because the certified letter was addressed to Parker, Evelyn could not sign for it. Evelyn did not have any knowledge of the contents of the letter. On November 7, 1979, the letter was returned to the town. Parker, therefore, never received the ten-day notice.

On November 5, 1979, as required by 36 M.R.S.A. § 942, the town filed a tax lien certificate on the property and recorded it in the York County Registry of Deeds. According to the certificate, the property was located in the Town of Shapleigh not in the Town of Acton. A true copy of this tax lien certificate was not mailed to either Evelyn Blaney or the Maine National Bank.

On March 31, 1981, as required by 36 M.R.S.A. § 943 (1978),[3] the town mailed a

discharging the tax lien mortgage shall be paid by the municipality to the register of deeds.

3. Section 943 provides:

The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, and shall give to said municipality all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.

The filing of the tax lien certificate in the registry of deeds shall be sufficient notice of the existence of the tax lien mortgage.

In the event that said tax, interest and costs shall be paid within the period of redemption, the municipal treasurer or assignee of record shall prepare and record a discharge of the tax lien mortgage in the same manner as is now provided for the discharge of real estate mortgages.

If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.

The municipal treasurer shall notify the party named on said tax lien mortgage not more than 45 days nor less than 30 days previous to the foreclosing date of the said tax lien mortgage, in a writing left at his last and usual place of abode or sent by certified mail, return receipt requested, to his last known address of the impending automatic foreclosure, indicating within the notice the exact date of foreclosure. In the event the notice provided in this section has not been given, the party named on said tax lien mortgage shall have the right to redeem said real estate mortgage within 30 days after the said notice.

After the expiration of the 18-month period of redemption, the mortgagee of record of said real estate or his assignee and the owner of record if the real estate has not been assessed to him or the person claiming under him shall, in the event the notice provided for said mortgagee and said owner has not been given as provided in section 942, have the right to redeem the said real estate within 3 months after receiving actual knowledge of the recording of the tax lien certificate by payment or tender of the amount of the tax lien mortgage, together with interest and costs, and the tax lien mortgage shall then be discharged by the owner thereof in the manner provided.

The tax lien mortgage shall be prima facie evidence in all courts in all proceedings by and against the municipality, its successors and assigns, of the truth of the statements therein and after the period of redemption has expired, of the title of the municipality to the real estate therein described, and of the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof.

Whenever the person against whom the tax is assessed shall have died after the tax has been committed and prior to the expiration of the 18-month period of foreclosure and such person shall have left a will offered for probate, the probate judge of the county wherein said will is offered upon petition of any devisee of the real estate on which said tax is unpaid may grant a period of redemption not to exceed 60 days following the final allowance or disallowance of said will. Notice of said petition shall be given to the tax

notice of impending automatic foreclosure by certified mail, return receipt requested, to Parker at the Aiea, Hawaii address. On April 6, 1981, Evelyn forwarded this letter to Parker. Parker received this letter at his Fairfax, Virginia residence. On May 5, 1981, the town claimed tax foreclosure and title to the property. Consequently, although on May 30, 1981, Parker forwarded to the town a check in the amount of $27.71, which would have covered the amount of delinquent taxes, the town returned the check to Parker. On September 17, 1981, the town sold the real estate to the defendant, William A. Small, for $25,000. The municipal quit-claim deed was recorded on October 8, 1981, in the York County Registry of Deeds.

The Blaneys subsequently filed a complaint for declaratory and injunctive relief against both the town and Small, claiming that the town failed to comply with the notice requirements of 36 M.R.S.A. §§ 942–943 and that the town violated the Blaneys' due process rights to notice and an opportunity to be heard as guaranteed by the fifth and fourteenth amendments of the United States Constitution and article I, section 6–A of the Maine Constitution. The plaintiffs moved for a summary judgment which was supported by affidavits from both Parker and Evelyn Blaney. On behalf of the town, a counter-affidavit was filed by R. John Wuesthoff, Esq.

The justice first determined whether the town's failure to send Evelyn Blaney a copy of the tax lien certificate destroyed the town's title to the property. The justice found that it was undisputed that Evelyn was a record owner and that under 36 M.R.S.A. § 942 she was entitled to a true copy of the tax lien certificate. According to the

collector of the town wherein said property is located and a certified copy of the court order shall be filed in the registry of deeds of the county wherein the property is located.

A discharge of a municipal tax lien mortgage given after the right of redemption has expired, which discharge has been recorded in the Registry of Deeds more than one year, shall terminate all title of the municipality derived from such tax lien mortgage.

justice, failure to comply with the statutory requirements rendered the town's title void.

The court further determined whether under 36 M.R.S.A. § 942 the town was required to send Parker actual notice of the filing of the lien. The justice first reasoned that by taking no additional steps to notify Parker after the certified letter had been returned, the town's conduct was fundamentally unfair. The justice also reasoned that under *Cummings v. Town of Oakland,* 430 A.2d 825 (Me.1981), actual notice of the filing of a lien under 36 M.R.S.A. § 942 was constitutionally mandated. The court stated that in *Cummings,* the Law Court held that because the ten-day notice required by 36 M.R.S.A. § 942 was actually received, the failure to receive actual notice of an impending automatic foreclosure under 36 M.R.S.A. § 943 did not violate the Constitution. As a result of the court's interpretation of the holding in *Cummings,* it concluded that in this case the failure to receive the ten-day notice of section 942 violated the Constitution. Entering a final judgment in favor of the plaintiffs against the town pursuant to M.R.Civ.P. 54(b), the justice granted the summary judgment.[4]

## I.

 In granting the summary judgment in favor of the Blaneys, the justice reasoned, in part, that under *Cummings v. Town of Oakland,* 430 A.2d 825 (Me.1981), actual notice of the section 942 ten-day notice was constitutionally required. In *Cummings,* we stated:

The fundamental principle underlying the holdings in these cases is one of fairness: where an initial notice intended to affect constitutional rights is required, *it cannot*

4. The justice did not decide whether the failure to send a true copy of the lien certificate to the Maine National Bank rendered the foreclosure void. In addition, the justice did not address the effect of its decision on defendant William A. Small's cross-claim against the town or on Small's counterclaim against the Blaneys.

be given by methods or under circumstances which the giver of notice could reasonably anticipate will be ineffective in communicating knowledge to the person or entity entitled to receive the notice. The principle is articulated in *Mullane [v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ] in this language:

> The notice must be of such nature as reasonably to convey the required information,.... ... The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

339 U.S. at 314–15, 70 S.Ct. at 657 [, 94 L.Ed. at 873–74]. In *Mullane,* the Court said that this principle was violated because the bank in settling a trust gave the required notice by publication when it had access to a list of names and addresses of those whose rights were directly affected by the content of the notice. In *Covey [v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) ], the Court again found a violation of the constitutional standard where a notice of tax foreclosure was sent and received by a property owner known to be incompetent by the town officials responsible for giving the notice. In *Robinson [v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) ], the violation occurred because the notice of State foreclosure on personal property was given by certified mail to an owner's address as listed in the records of the Secretary of State (as prescribed by statute), but at a time when the State officials knew that the property owner was not at that address because he was in the custody of the State as a prison inmate.

However, those cases, and the factual foundations present in each for the application of the principle of "fundamental fairness" as a constituent element of due process of law, are all to be distinguished from the case at bar.

430 A.2d at 831 (emphasis added). A constitutionally deficient notice is therefore one given by means which the "giver of notice could reasonably anticipate will be ineffective" to communicate actual knowledge of the contents, under the circumstances, to one entitled to receive the notice. 430 A.2d at 831. In construing the constitutional import of section 943, all that we held was that the section 943 notice of impending foreclosure was not of constitutional dimension. We did not hold that actual notice of the section 942 ten-day notice was constitutionally mandated. The justice, therefore, improperly interpreted *Cummings.*

In this case, we need not decide whether the section 942 ten-day notice of a tax lien claim, which was sent by certified mail and which was returned to the town, was given by means that, in the circumstances, "the giver of notice could have reasonably anticipated would be ineffective" to communicate its contents to Parker Blaney. We hold that the foreclosure is void for another reason.

## II.

■ In its brief, the town argues that there is a genuine issue of material fact as to whether Evelyn Blaney is a record owner of the property in question. In her affidavit, Evelyn stated that she is a record owner of the property taxed by the Town of Shapleigh. In an affidavit submitted by R. John Wuesthoff, Esq., he stated that Evelyn's name does not appear in the York County Registry of Deeds as a record owner *of any Shapleigh property.*[5] Because these

---

5. The affidavit provides in part:

2. On May 10, 1982 at the York Registry of Deeds located in Alfred, Maine I examined the grantor and grantee indexes in search of any transactions of the premises which are the subject of this action from the said Parker N. Blaney to any person or entity from the time of Parker N. Blaney's acquisition of the premises on March 11, 1957. I made such search by examining all transactions from Parker N. Blaney and noting the nature of the instrument, the date of the instrument, the date of its record and the name of the city, town or unincorporated place where the

affidavits conflict, a genuine issue of fact is presented. M.R.Civ.P. 56. Thus, entry of summary judgment at the Superior Court level was inappropriate.

■ At oral argument before this Court, however, Wuesthoff, representing the town, conceded that he had searched for Evelyn's name only as a record owner of property indexed as located in Shapleigh. He further conceded that Evelyn was a record owner of property identified by deed as located in Acton. He stated that the metes and bounds description of the property located in Shapleigh was the same as the description of the land identified as located in Acton. Finally, although the property was actually located in Shapleigh, Wuesthoff conceded the Town of Shapleigh knew that the deed improperly identified the property as being located in the Town of Acton.[6] The force of these concessions makes it clear that there is, in fact, no genuine issue of material fact as to whether Evelyn was a record owner of title to the property in question; she clearly was a record holder of such title.

■ Alternatively, the town asserts that Evelyn Blaney can not be considered a record owner because she did not notify the assessors as required by 36 M.R.S.A. § 555 and § 557 (1978). When a statute imposing or enforcing a tax or other burden on the citizen is susceptible of more than one interpretation, the court will interpret the statute in a light most favorable to the citizen. *McCarty v. Greenlawn Cemetery Ass'n,* 185 Me. 388, 392–93, 185 A.2d 127, 129 (1962) (quoting *Millett v. Mullen,* 95 Me. 400, 415, 49 A. 871, 873 (1901)).

Title 36 of M.R.S.A., chapter 105, subchapter II provides for real property taxes which may be imposed by cities or towns. Section 555 states in part:

A tenant in common or a joint tenant may be considered *sole owner for the purposes of taxation, unless he notifies the assessors what his interest is*. . . .

(emphasis added) and section 557 states:

When assessors continue to assess real estate to the person to whom it was last assessed, such assessment is valid, although ownership or occupancy has changed, unless previous written notice to the assessors has been given of such change and of the name of the person to whom it has been transferred or surrendered.

Sections 555 and 557 seek to protect tax collectors from having to search for assessible owners of the property. These statutes place the burden upon the previously assessed owner to notify the tax collector that ownership has changed hands or that other owners now exist. *See Inhabitants of Town of Canton v. Livermore Falls Trust Co.,* 136 Me. 103, 3 A.2d 429 (1939) (court held that assessor, in laying assessments, may treat holder of title as record owner

land conveyed is situated. Up to November 5, 1979, the time of the recording of the tax lien certificate in the said Registry of Deeds, the only transaction from Parker N. Blaney of the said Shapleigh premises was a May 28, 1965 lien recorded in Book 105. The indexes, both grantor and grantee, reflect no transfer of the Shapleigh premises from Parker N. Blaney to Parker N. Blaney and Evelyn F. Blaney of April 10, 1959 or September 2, 1969, nor do the indexes, grantor or grantee, reflect the transfer from Parker N. Blaney or Parker N. Blaney and Evelyn F. Blaney to the Maine National Bank on or about August 29, 1969 or September 9, 1969, as alleged by the Plaintiffs in their Complaint.

3. On November 5, 1979, the time of the recording of the tax lien certificate in the Registry of Deeds by Georgeanna L. Hunt-

ress, Tax Collector of the municipality of Shapleigh, Maine, a certified copy of which is attached hereto, there were no record holders of a mortgage on said real estate nor was Evelyn F. Blaney a record owner of said real estate.

6. Wuesthoff explained during oral argument that during the late 1950's the land in question was taxed by the Town of Acton presumably because the deed stated that the land was located in Acton. During the 1960's, the Town of Shapleigh discovered that the metes and bounds description established that the land was located in Shapleigh. From that point on, the Town of Shapleigh taxed the property. The deeds were never corrected to reflect that the property was actually located in Shapleigh.

without further inquiry). These statutes specifically address the assessment of taxes.

Title 36 of M.R.S.A., chapter 105, subchapter IX, article 2, however, provides the procedure by which a city or town may enforce a lien on real estate for delinquent taxes. Specifically, section 942 provides the procedure for imposing a tax lien certificate.[7] The statute provides in part:

At the time of the recording of the tax lien certificate ... in all cases the tax collector ... shall send by certified mail, return receipt requested, to each record holder of a mortgage on said real estate, to his last known address, a true copy of the tax lien certificate. *If the real estate has not been assessed to its record owner, the tax collector shall send by certified mail, return receipt requested, a true copy of the tax lien certificate to the record owner.*

(Emphasis added.)

 Section 942 seeks to protect a record owner who does not pay the assessed taxes. The statute clearly provides that if the real estate has *not* been assessed to its record owner, then the record owner shall be notified of the tax lien certificate. 36 M.R.S.A. § 942. The statute recognizes that such a record owner has a right to notice before his or her property is taken in payment of delinquent taxes. To suggest that sections 555 and 557 are incorporated into section 942 violates the clear language of section 942, which seeks to provide notice of tax lien to those record owners who are not assessed taxes.[8] Evelyn, therefore, did not have to notify the town to be considered a record owner for the purposes of section 942.

7. This statute was amended in 1979. Because the delinquency occurred in 1978, the amended statute does not apply to this case.

8. To support its position, the town quotes language from *Harrington v. Inhabitants of Town of Garland,* 381 A.2d 639 (Me.1978). "On the issues regarding the effect of the judgment as against Marjorie, there is nothing to guide this court regarding whether Marjorie ever informed the tax collector of her status so as to bring into play 36 M.R.S.A. § 555." 381 A.2d at 643. According to the town, this quoted

It is a well-established principle that there must be strict compliance with statutory requirements to divest property owners of their titles for nonpayment of taxes. Failure to follow strictly the statutorily delineated requirements will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the tax lien foreclosure procedures. *Arsenault v. Inhabitants of Town of Roxbury,* 275 A.2d 598, 599–600 (Me.1971); *see also City of Auburn v. Mandarelli,* 320 A.2d 22, 26 (Me.1974). Failure to provide Evelyn Blaney with proper notice rendered the town's tax lien certificate void.

The entry is

Judgment affirmed.

Remanded for further proceedings on the counterclaim and cross-claim.

All concurring.

language suggests that notice under sections 942 and 943 is required only when the record owner has notified the tax collector pursuant to section 555. The sentence following the quoted language, however, reads: "[s]ince the justice below was not accorded the opportunity to dispose finally of all relevant issues, we decline to review these issues on appeal." 381 A.2d at 643. The sentence which suggests that section 555 notification is required, therefore, is dictum.